BACARDI CORPORATION *v.* UNITED STATES (No. 2139).[1]

1. CONSTRUCTION, PARAGRAPH 600, WAR REVENUE ACT OF FEBRUARY 24, 1919—WAR TAX ON SPIRITS—AMOUNT TAXED.

Paragraph 600 of the war revenue act approved February 24, 1919, levied an additional tax ·on distilled spirits then in bond and withdrawn for nonbeverage purposes. No duty was imposed on the owner of such distilled spirits imported and warehoused prior to the passage of the act to request a regauge of the spirits. The withdrawal tax was based by the law on the amount in bond at the time of the law's enactment, and not upon the amount imported and warehoused. It became the *collector's* duty to secure a regauge, since he could not reliquidate without one.

2. ESTOPPEL.

A quantity of rum was imported and entered for warehouse on April 23, 1917. It was gauged on May 29, 1917, the gauger's return showing that the packages were then in a bad condition. A regauge made subsequent to the passage of the war revenue act of February 24, 1919, showed substantial loss. Upon the passage of this act levying an additional duty based upon the amount of such spirits in bond at the time of the act's becoming law, it became the duty of the collector to ascertain such amount, and the United States should not be permitted to take advantage of its own neglect to do so by levying such additional duty based upon the amount shown by the original gauge.

[1] T. D 39078.

## United States Court of Customs Appeals, March 31, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44476.

[Modified.]

*Barnes, Chilvers & Halstead* for appellant.

*William W. Hoppin,* Assistant Attorney General (*Marcus Higginbotham, jr.,* special attorney, of counsel), for the United States.

[Oral argument February 17, 1922, by Mr. Halstead and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

Two hundred hogsheads and 200 quarter hogsheads of Bacardi rum, imported at the port of New York, were entered for warehouse on the 23d of April, 1917, and gauged on May 29, 1917. The gauger's return shows that 7 of the packages had broken staves or heads started, and that 16 of them were plugged and 11 stained. Duty was assessed at $2.60 per proof gallon, as provided in paragraph 237 of the tariff act of 1913, less 20 per cent, as required by the treaty with Cuba, from which country the rum was imported. The collector reports that on such liquor as remained in store after October 3, 1917, there was levied an additional tax of $2.10 per proof gallon to meet the requirements of section 300, act of 1917. According to the report of the surveyor dated November 17, 1920, 15 of the hogsheads were regauged between February 7 and February 20, 1919, and 65 between March 4, 1919, and June 20, 1919.

Fifty hogsheads and 160 quarter hogsheads were entered for nonbeverage consumption on June 4, 1920, and the collector levied on the rum so withdrawn $2.60 per proof gallon under paragraph 237 of the act of 1913, less 20 per cent, as prescribed by the treaty with Cuba, and an additional duty of $2.20 per proof gallon in accordance with paragraph 600 of the act of February 24, 1919.

The rates so assessed by the collector were applied to and collected on the number of gallons shown by the gauger's report made on the entry of the goods for warehouse, notwithstanding the fact that the packages entered for withdrawal on June 4, 1920, were regauged between June 11 and June 15, 1920, and such regauge established that many of the hogsheads and quarter hosgheads in warehouse had lost a very considerable part of their contents. Indeed, a regauge had within a month of the passage of the act of February 24, 1919, showed that 35 of the hogsheads not here involved had lost a substantial quantity of the rum originally entered.

The importer protested that only the quantity of rum in the hogsheads at the time of the passage of act of February 24, 1919, was subject to the tax therein prescribed and that the exaction of

$2.20 per proof gallon on rum not in bond on February 24, 1919, was illegal and void.

The Board of General Appraisers overruled the protest and the importer appealed.

The Government contends first, that it was the duty of the importer to request within a reasonable time after the passage of the act of February 24, 1919, a regauge of all spirits in bond after the passage of said act, and that failing to make such a request he was bound by the gauge made at the time of the entry of his goods; second, that the duty of $2.60 per gallon prescribed by the act of 1913 and the additional duty of $2.20 per gallon imposed by the act of February 24, 1919, were properly assessed and collected on the number of gallons shown by the gauge of the rum made at the time it was entered for warehouse.

We can not admit that it was *primarily* the duty of the importer to request a regauge or remeasurement of the merchandise upon the passage of the law imposing a rate of duty different from that in effect at the time of the entry of the importation.

The act of February 24, 1919, imposed an additional duty of $2.20 per gallon on distilled spirits *now in bond* and withdrawn for non-beverage purposes. By the language of the statute itself that duty attached to the *quantity of spirits then in bond*, and thereby accomplished a change in the rate of duty on distilled spirits, which change in rate obliged the collector to reliquidate the entry as required by article 630 of the Customs Regulations of 1915. The collector did reliquidate, but he reliquidated without any information as to the distilled spirits actually *then in bond* other than the gauge made three years before on entry of the goods. Inasmuch as liquidation, as well as reliquidation, means the final computation and ascertainment of the duties due on merchandise, which computation or ascertainment is based on official reports as to the quantity, character, and value thereof (art. 615), and inasmuch as the collector could not possibly know the number of gallons in bond when the additional duty went into effect in February, 1919, it is very evident that it was the collector's duty to order a regauge of the spirits in warehouse on that date.

Sixty-five hogsheads were regauged between March 4 and June 20, 1919, and showed a shortage, but the spirits which are here the subject of controversy were not regauged until June 15, 1920, more than 15 months after the passage of the act. Under the circumstances we can not presume that the quantity of spirits entered in bond on April 23, 1917, was the quantity in bond at the time of the passage of the act of February 24, 1919, especially as a gauge of 65 hogsheads taken within two or three months of February 24, 1919, showed a

substantial loss. If there had been no regauge it is possible that we would have been bound to accept the original gauge, but in saying that we do not mean to pass upon the validity of a reliquidation under paragraph 600 without a regauge. In this case, however, there was an official regauge of the spirits withdrawn for consumption on June 4, 1920, subsequent to the passage of section 600, and we must assume that the quantity shown by that gauge was the quantity in bond on February 24, 1919, not only because the original gauge manifestly incorrectly represented the quantity on hand on February 24, 1919, but because the Government should not be permitted to take advantage of its own delay in making a regauge which it was the duty of the collector to make on reliquidation of the entry in this particular case.

We hold, first, that the importation was subject to a duty of $2.60 per gallon on the number of gallons shown by the gauge made on entry of the goods for warehouse; second, that the spirits were subject to the additional duty of $2.20 per gallon on the number of gallons officially reported on regauge of the goods made subsequent to the passage of the act of February 24, 1919.

The decision of the board in so far as it applies the rate of $2.60 per gallon to the number of gallons shown by the original gauge is affirmed. In so far as the decision applies the additional rate of $2.20 per gallon to the quantity entered for warehouse and not to the quantity shown by the regauge made after passage of the act of February 24, 1919, it is *reversed*.