(C. D. 317)

E. Fucini & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided April 17, 1940)

*James W. Bevans*, for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney), for the defendant.

Before Brown, Tilson, and Keefe, Judges

Brown, Judge: This suit against the United States was brought in New York to recover a drawback upon exported merchandise claimed to have been illegally withheld.

The plaintiff claims that under the provisions of section 313 (d) of the Tariff Act of 1930 a drawback equal to the internal-revenue taxes paid on the alcohol used in the manufacture of a medicinal preparation which was subsequently exported should have been allowed. There is no real dispute as to the facts, and a statement of the chronology thereof will materially aid in determining the issue.

At some time prior to November of the year 1933 the American Commercial Alcohol Corporation distilled certain grain alcohol and placed it in bond in a warehouse in the Illinois internal-revenue district.

On various dates in November and December of 1933, and in March, 1934, the distiller withdrew the alcohol in question from bond and paid to the collector of internal revenue of the Illinois district an internal-revenue tax of $1.10 per proof gallon. The alcohol so withdrawn was sold to the plaintiff, a manufacturer of medicinal prepara-

tions located in New York, to be used in the manufacture of a proprietary stomachic. The alcohol was accordingly transported from Illinois to the plaintiff's place of business.

Before the alcohol was used in the process of manufacturing the medicine, however, the Liquor Taxing Act of 1934 was passed, which provided for an increase in the internal-revenue tax on alcohol from $1.10 to $2.00 per proof gallon, and provided also that as to all alcohol held in stock the difference between the new and the old rates, namely 90 cents per proof gallon, should be collected as a floor tax. This was duly paid by the plaintiff to field officers under the direction of the collector of internal revenue of the New York district.

Section 313 (d) of the Tariff Act of 1930 reads as follows:

(d) FLAVORING EXTRACTS AND MEDICINAL OR TOILET PREPARATIONS.—Upon the exportation of flavoring extracts, medicinal or toilet preparations (including perfumery) manufactured or produced in the United States in part from domestic alcohol on which an internal-revenue tax has been paid, there shall be allowed a drawback equal in amount to the tax found to have been paid on the alcohol so used.

The plaintiff manufactured a preparation called "L'Americano Stomachtic Bitters" with the use of the tax-paid alcohol previously described and, on December 11, 1936, filed the proper notices of intent to export the same with benefit of drawback, and it was duly laden on board the export vessel under customs supervision and the vessel thereafter cleared for a foreign port.

On January 12, 1937, plaintiff filed drawback entry 7983, claiming drawback on the tax-paid alcohol used in the manufacture of a medicinal preparation exported in accordance with the law and regulations, and also filed a certificate of manufacture and delivery, required by article 1052 of the Customs Regulations of 1931, then in force and effect, containing thereon, among other things, a statement of the number of gallons used in said manufacture. It is to be noted that no space is provided on either the drawback entry or the certificate of manufacture, the forms of which are prescribed by the regulations, wherein the exporter is required to state the amount of tax paid, and it is also to be noted that there does not seem to be any question but that all of the regulations prescribed by the Secretary of the Treasury under authority of section 313 (i) of the Tariff Act requisite to secure the payment of such drawback were complied with.

In accordance with article 1054 of said regulations plaintiff made application in writing to the Commissioner of Industrial Alcohol at Washington, D. C., for the issuance of a certificate showing that the alcohol described in the application was withdrawn from warehouse tax-paid. It should be noted that such certificate is not forwarded to the manufacturer or exporter, but is forwarded direct to the collector of customs.

For some reason, probably due to the fact that the $1.10 tax was paid in Illinois while the 90-cent additional tax was paid in New York, certificates Nos. 8356 and 8357, dated May 15, 1937, were issued by the Commissioner of Internal Revenue showing the payment only of $1.10 per proof gallon as tax on the alcohol involved.

It does not appear that the plaintiff knew at the time that the certificates covered only the $1.10 per proof gallon tax payment, but it does appear that prior to the time the collector of customs at the port of New York acted to liquidate drawback entry 7983 the plaintiff had taken up with his office the question of whether the 90-cent additional tax was subject to claim for drawback. Plaintiff was referred to the Commissioner of Internal Revenue and, under date of June 17, 1937, the following letter was sent to the plaintiff:

Sirs:

Receipt is acknowledged of your letter of June 11, 1937, wherein you request to be advised as to whether you are entitled to a refund of the floor tax paid on alcohol used by you in the manufacture of medicinal preparations which were subsequently exported.

Under the provisions of Section 4, Title I of the Liquor Taxing Act of 1934, effective January 12, 1934, the rate of drawback allowed upon the exportation of distilled spirits on and after January 12, 1934, shall be equal to the rate of the internal revenue tax paid in respect of the distilled spirits exported, but shall not exceed the rate of $2.00 per proof gallon.

Respectfully,
STEWART BERKSHIRE,
*Deputy Commissioner.*

Immediately thereafter and during the month of June, 1937, the plaintiff applied to the Commissioner of Internal Revenue for a certificate showing the payment of the 90-cent floor tax. This last certificate was not furnished to the collector of customs by the Commissioner of Internal Revenue until after February 15, 1938.

In the meantime, on September 18, 1937, the collector of customs at the port of New York liquidated drawback entry 7983, allowing drawback in accordance with certificates 8536 and 8537 of the Commissioner of Internal Revenue dated May 15, 1937, at $1.10 per proof gallon.

Plaintiff did not protest that action of the collector.

As stated above, a supplemental certificate of the Commissioner of Internal Revenue of tax-paid alcohol was issued February 15, 1938, and was forwarded to the collector of customs at the port of New York, and thereafter, on October 21, 1938, plaintiff filed drawback entry 4241, claiming drawback on the 90-cent floor tax paid and evidenced by the supplemental certificate above referred to.

Drawback of this amount was denied by the collector on the ground that the liquidation of September 15, 1937, constituted the final computation or ascertainment by the collector of the amount of drawback

due and, since the plaintiff had not filed a protest against the same within 60 days after it was made, it became final and conclusive upon all persons under the provisions of section 514 of the Tariff Act of 1930. The collector's refusal was under date of April 21, 1939.

On April 25, 1939, plaintiff filed the protest at bar against the refusal of the collector to allow drawback under entry 4241 and, prior to the taking of testimony on the merits, counsel for the Government moved to dismiss the protest on the ground that it was untimely, final liquidation having taken place (it was contended) on September 15, 1937. Decision on the motion was reserved until the case should be taken up on the merits.

It has been said heretofore that drawback entry 7983 was "liquidated." Section 505 of the Tariff Act of 1930 sets forth the statutory requirement for liquidation of import entries, but the drawback statute, section 313, does not provide for liquidation of drawback entries. It may be assumed to be implicit in the statute, however, that liquidation of such entries necessarily precedes refund thereunder.

It is provided in article 1075 (a) of the Customs Regulations of 1937, which is essentially the same as its precedessor, article 1054 (a) of the Customs Regulations of 1931, that—

Upon application in writing the Commissioner of Internal Revenue (Alcohol Tax Unit) shall issue a certificate on Internal-revenue Form 646, showing that the alcohol described in the application was withdrawn from warehouse tax-paid, and forward it to the collector of customs. Each certificate shall be given a serial number.

and in article 1076 (a) of the 1937 regulations, which is similar in all material respects to article 1055 (a) of the 1931 regulations, it is provided that—

When the drawback claim has been completed by the filing of the entry, bills of lading, etc., as required by the regulations and the landing certificate having been produced where necessary, and the exporting vessel or conveyance having been cleared as shown by the records of clearance in the case of direct exportation or by certificate where the merchandise was exported at another port, the collector shall proceed to ascertain the amount of drawback due by reference to the certificate of manufacture and the established rate.

Since the certificate of the Commissioner of Internal Revenue required by article 1075 (a), *supra*, is the only information the collector has as to the amount of tax paid, it is obvious that his ascertainment of the amount of drawback due must be based thereon as well as "by reference to the certificate of manufacture and the established rate."

It must be assumed that the "ascertainment of the amount of drawback due" provided for in article 1076 (a), *supra*, constitutes the collector's liquidation of the entry. "Liquidation" has a well-defined

meaning in customs matters, and in *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078, it was said to be—

—the final computation and ascertainment of the duties due on merchandise, *which computation or ascertainment is based on official reports as to the quantity, character, and value thereof * * *.* [Italics added.]

It therefore appears that the collector's liquidation cannot be considered to be complete so as to become final and conclusive after 60 days from the date thereof in the absence of protest, where it appears that a report necessary to a "final computation and ascertainment" either fails to reach the collector or is incomplete as to certain items. In such case it must be held that his liquidation is not final, at least insofar as any additional facts which might affect liquidation are contained in the missing or incomplete report.

Such is the case here. The Commissioner of Internal Revenue failed to certify the entire amount of tax paid. The collector's liquidation of drawback entry 7983 can be considered as binding in the absence of protest within the statutory time only as to the refund of the $1.10 internal-revenue tax paid on withdrawal from the warehouse. It was not a final computation and ascertainment insofar as the 90-cent floor tax was concerned, and the plaintiff's action in later filing drawback entry 4241 was proper under the circumstances.

The provisions for judicial review of administrative action provided by section 514 of the Tariff Act of 1930 are to be liberally construed to effect its main purpose, and the time limitation for beginning suit thereunder is not to be applied artificially. Therefore, under the peculiar circumstances arising here which were outside the control of the plaintiff, a partial liquidation made by the collector upon an incomplete report to him by other officials is not to be construed as the final liquidation from which protest lies, but, upon a fuller, accurate report by the other officials to the collector of customs of additional taxes levied and paid while the goods were still in the plaintiff's warehouse, the filing of a new drawback entry to cover such excess is proper, and protest against the collector's refusal to refund such excess if made within 60 days after such subsequent refusal will be timely.

In *United States* v. *Jefferson Electric Co.*, 291 U. S. 386, at page 402, Justice Van Devanter, speaking for the court, said:

* * * the statutes providing for refunds and for suits on claims therefor proceed on the same equitable principles that underlie an action in assumpsit for money had and received. Of such an action it rightly has been said:

This is often called an equitable action and is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which *ex aequo et bono* belongs to the plaintiff. It was encouraged and, to a great extent, brought into use by that great and just judge, Lord Mansfield, and from his day to the present, has been constantly resorted to in all cases coming within its broad principles. It approaches nearer to a bill in equity than any other common law action.

The protest at bar was filed within 60 days after the collector refused to allow drawback on entry 4241, and the Government's motion to dismiss the same as untimely is therefore denied.

It appearing from the record that all requirements of the drawback statute and the regulations necessary to secure drawback of the 90-cent floor tax were complied with, the claim in the protest that such drawback should be allowed is sustained, and the collector will allow drawback accordingly.

Let judgment be issued so ordering.