UNITED STATES *v.* SHERBROOK DISTRIBUTING Co. (No. 4525)[1]

United States Court of Customs and Patent Appeals, March 30, 1946

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys, of counsel), for the United States.
*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument February 6, 1946, by Mr. Donohue and Mr. J. Stuart Tompkins]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Third Division, awarding appellee a refund of certain moneys assessed and collected as customs duties by the Collector of Customs at the port of Cincinnati, Ohio, in connection

---

[1] C. A. D. 330.

with an importation of merchandise consisting of whisky contained in barrels. The merchandise was imported from Canada in January 1934.

One consular invoice states a quantity of rye whisky aggregating 1,300.15 proof gallons contained in 30 barrels and another a quantity of bourbon whisky aggregating 1,409.07 proof gallons contained in 30 barrels, a total of 2,709.22 proof gallons, which quantity was entered by the importer.

The Government gauger at Cincinnati reported 1,376.87 proof gallons of rye and 1,486.38 proof gallons of bourbon, a total of 2,863.25 proof gallons, which amounted to an excess of 154.03 proof gallons over the invoiced and entered quantity.

The number of gallons stated on the consular invoices and entered by the importer was that reported by the gauger in Canada who was associated with the exporter, Consolidated Distilleries, Ltd., of Montreal, Canada, as having been found by the weight method of gauging, which was the official method of gauging in use in Canada at the time of the exportation here involved, that is in January 1934. The weighing or gauging was done, as required by Canadian law, in the presence of a Canadian excise officer, who certified to the correctness of the findings.

In the United States the whisky was gauged by the rod method, which presumably accounts for the difference of 154.03 proof gallons hereinabove alluded to. That was the official method for gauging required in the United States at that time.

We quote the following from the decision of the trial court:

It is established here * * * beyond any question of doubt, that the 60 barrels of whisky were purposely filled approximately three-quarters full of whisky; that the whisky had been in the Canadian warehouse since 1928 and because of normal shrinkage during that period the barrels were only partly full; that in order to obtain the quantities of whisky in each of these barrels they were emptied into a tank attached to a scale and the whisky contents were weighed in the presence of a Canadian excise officer, who certified to the findings; the empty barrels were weighed individually; the whisky after weighing was returned to the barrel so that each barrel was approximately three-quarters full; and then each barrel with its contents was weighed. The gross weight, the tare weight, and the net weight were stenciled on each barrel. There also appeared stenciled thereon the number of the barrel, the quantities of American wine gallons, and American proof gallons comprising the contents, and such stenciled portion corresponded to the data on the packing lists.

The Government does not question the correctness of the foregoing findings.

The testimony of the party, Mr. George Drummond, who gauged the whisky in Canada was taken, as was that of Mr. Clifford H. Petersen, the United States official who gauged it at Cincinnati, both of whom were called as witnesses by the importer, appellee here. Both

witnesses had had many years' experience in gauging whiskies and their competency is not in question.

Drummond testified to the effect that the weight method used by him was much more accurate than the rod method and Petersen testified to the same effect. The latter stated, in substance, that he used the rod method because it was required by the regulations in effect in January 1934, but that in his opinion the weight method was much more accurate, "because," as his testimony was epitomized by the trial court, "the barrels are not perfect cylinders and there is a lot of room for error, whereas in the weight method, regardless of irregularities, the weight will be the same."

This phase of the matter need not be dwelt upon because the Government concedes that the weight method is the more accurate of the two, and that it is the method now being used by United States gaugers, the regulations having been changed in that respect.

It appears that the importer directed the shipper to transport the whisky in the original partially filled barrels because (aside from its desire to have the barrels, there being a shortage of whisky barrels in the United States at the time) the importer, under Government regulations, could not claim age for the whisky unless, as testified by the representative of the purchaser, it had "the original aged-in-the-wood whisky."

Just here it may be said that the barrels were all in good condition, and that no question of leakage, breakage, or damage is involved.

The controversy does not relate to the classification of the merchandise, it having been properly classified under paragraph 802 of the Tariff Act of 1930 which provides customs duty at the rate of $5 per proof gallon upon imported whisky. It grows out of the action of the collector in assessing and collecting duty upon the basis of the *capacity of the barrels*, less 2½ per centum for normal outage, rather than upon the basis of the gallonage shown upon the consular invoice and entered by the importer, or upon the basis of the quantity reported by the United States gauger.

Upon the basis adopted by the collector of customs, duty was assessed upon 3,804.19 proof gallons (that being the aggregate capacity of the 60 barrels as reported by the gauger) less 2½ per centum for normal outage.

It readily may be seen that this was an excess of 1,094.97 gallons over the invoiced and entered quantity, and an excess of 940.94 gallons over the quantity reported by the United States gauger.

It appears that the importer paid the exporter for the invoiced and entered quantity, 2,709.22 gallons, at the rate of $4.38 per proof gallon, the total amount paid the exporter being $11,866.38.

. It also appears that an internal revenue tax, *which is not involved here,* was levied and collected on only 2,860.6 gallons, 2.65 gallons less than the quantity reported by the gauger.

We quote the following succinct statement from the decision of the trial court: .

The documentary evidence admitted at the trial consists of collective exhibit 1, a packing list dated January 17, 1934, certified as a true copy of record by the Canadian excise officer, and the original weight sheets showing the penciled figures made at the time of weighing by witness Drummond. Exhibit 2 is the Canadian entry for export, noting the quantities exported, and that said packages were checked and sealed in car No. C. V. 83471 on January 17, 1934, by an officer of the National Revenue. Exhibits 3 and 4 consist of copies of the weigher's report to the collector of the gauge by the rod method of the whiskies in question. Exhibit 5 is a copy of the immediate transportation entry, showing that the shipment left Belleville on January 18, arrived at Fort Huron on January 19, and was entered for transportation on January 20, 1934. Exhibit 6 is the dock book used by Mr. Petersen to record his findings in measuring the barrels by the rod method.

The text of a stipulation of counsel for the respective parties reads:

It is hereby stipulated by and between the attorneys for the respective parties in this case, subject to approval of the Court, *nunc pro tunc,* as of a time prior to the submission of the above entitled case, that a Packing List pertaining to the 60 barrels of Whiskey in suit, such as the one which constitutes a part of Collective Exhibit 1 herein, was before the liquidator at the time Warehouse Entry No. 70, covered by said protest, was liquidated September 22, 1934.

It will be observed from the stipulation that it was agreed that a packing list was before the *liquidator* at the time the entry was liquidated, but it does not state that such a list was attached to the respective invoices *when the merchandise was entered* at the port of Cincinnati. Counsel for the Government contend that it was incumbent upon the importer to prove that such a list was attached to the respective invoices used in making the entries and lay great emphasis upon the fact that the stipulation did not state that they were.

As we understand the position of counsel for the Government, it is conceded that if the lists referred to had been shown to have been attached to, or filed with, the invoices at the time the merchandise was entered, the importer would be entitled to recover. It is, therefore, important to note the findings of the trial court upon this question and we quote from its decision the following: .

Attached to the invoice and entry papers as forwarded by the collectors to the court is a "packing list" bearing a notation upon the bottom thereof as follows: "This Packing List forms part of Consular Invoice No. 373." Upon this list appears the number of each package, the gross weight, the tare weight, and net weight thereof, and also the quantity of American wine gallons and American proof gallons contained in each package. Two "Detail Lists" also attached to the entry papers show the specifications of contents of the rye and the bourbon whiskies.

Subsequently, the trial court said:

A careful examination of the invoice and entry papers as well as the testimony fails to disclose anything to substantiate the Government's contention that the specifications, that is to say, the packing list, was not filed at the time of entry. In fact, the specifications bear a notation that "This Packing List forms part of Consular Invoice 373," the number of the consular invoice before us in this case. The packing list was sent to the court along with the invoice and entry papers and from appearance thereof was attached thereto. True, counsel for the importer entered into a stipulation with counsel for the Government, specifically agreeing that the packing list was before the liquidator at the time of liquidation, but that agreement cannot be construed as stated by counsel for the Government in brief "that detailed information showing the gauged quantity of each barrel had been submitted to the collector prior to liquidation, although after entry." From all that appears before us, the specifications in this case were actually present at the time of entry of the merchandise as a part of the consular invoice.

It seems to us that the reasoning of the court is logical and sound and that its conclusion, as stated in the last sentence of the foregoing quotation, was correct. Had we been sitting as a trial court, we would have reached the same conclusion upon the record presented.

In view of our holding upon this—the pivotal point of the case as it is presented to us—we deem it unnecessary to enter upon a detailed analysis of the statutes, regulations, administrative orders, and judicial decisions cited and discussed in the Government brief, or those cited and discussed in the brief for appellee.

There is, however, a phase of the case which, as we view it, requires further consideration.

The judgment order of the trial court reads:

It is hereby ordered, adjudged, and decreed: that the protest in this case is sustained insofar as it is claimed that the 30 barrels of rye whiskey and the 30 barrels of Bourbon whiskey are properly assessable with duties and internal revenue taxes upon the basis of the invoiced and entered quantities, and the collector will reliquidate the entry and make refund accordingly.

If affirmed *in toto*, apparently, the judgment will result in importer receiving a refund of the customs duties which it paid upon 1,094.97 gallons of whisky, that being the excess gallonage over the invoiced and entered quantity. This would seem to disregard the quantity reported by the United States gauger, 2,863.25 gallons, an excess of 154.03 gallons over the entered quantity.

It is our view that for the purpose of assessing customs duty on whisky in cases such as this, the quantity reported by the United States gauger, when such quantity is determined by the official gauging method in force at the time of the gauging, must be taken as the basis of such assessment, rather than the quantity stated as having been found by gaugers in the country from which the whisky is exported. See *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, 255, T. D. 39078; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, 156, and 158, C. A. D. 227.

In the instant case the United States gauger followed the method required by the regulations in force at the time of gauging, and reported a quantity of 154.03 gallons in excess of the quantity entered.

We hold that the reliquidation should be based on the actual gallonage reported by the United States gauger, that is 2,863.25, and that there should be no refund of the duty paid on the 154.03 gallons excess over the entered quantity.

The judgment of the trial court is, therefore, *modified*, and the case is *remanded* for further proceedings in conformity with the views herein expressed.