UNITED STATES *v*. V. P. ROBERTS & Co. (No. 4548)[1]

[1] C. A. D. 356.

United States Court of Customs and Patent Appeals, January 7, 1947

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel, for the United States.
*Henry L. Ziegel* for appellee.

[Oral argument December 11, 1946, by Mr. Donohue and Mr. Ziegel]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division (C. D. 988), involving what that court designates as "a highly technical and somewhat new jurisdictional question concerning the statutory term 'liquidation'."

The question was raised by the Government's motion to dismiss appellee's protest against the collector's classification (conceded by Government counsel to have been erroneous) of certain wool entered at the port of Boston, Mass. The trial court rendered judgment denying the motion to dismiss and sustaining the protest.

The question presented is one of law.

In the decision of the trial court there is a comprehensive and detailed statement of facts which we take the liberty of paraphrasing. There is no controversy concerning the accuracy of the statement.

The duties covered by the protest were assessed upon six bales of wool which were part of an importation of 959 bales made by A. Pistorino & Co., Inc., entered for warehouse January 19, 1943. See 19 U. S. C. (1940 edition) § 1557.

The six bales were transferred to the appellee March 24, 1943, the transfer being made in conformity with section 557 of the Tariff Act of 1930, as amended by section 22 (b) of the Customs Administrative Act of 1938.

Paragraph (a) of the section is the familiar provision for warehouse entry and need not be quoted. Paragraph (b) reads as follows:

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 1562 and 1563 of this chapter which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. Any such transfer may be made irrevocable by the filing of a bond of the transferee in such amount and with such conditions as the Secretary of the Treasury shall prescribe, including an obligation to pay all unpaid regular, increased, and additional duties, charges, and exactions on the merchandise the subject of the transfer. Upon the filing of such bond the transferor shall be relieved from liability for the payment of duties, charges, and exactions on the merchandise the subject of the transfer, but shall remain bound by all other unsatisfied conditions of his bond.

Appellee made bond as required by the statute whereby the transfer to it became irrevocable. The transferor, therefore, was relieved from liability for the payment of "duties, charges, and exactions" on the six bales and the transferee (appellee) became liable therefor. Appellee also was subrogated to the rights of the transferor including "all rights to file protests" and "to receive all lawful refunds of moneys paid by him [it] to the United States." Appellee withdrew the six bales from warehouse for consumption March 25, 1943, paying then the *estimated* duties.

It is interesting to note, although the transactions are not involved here, that between March 22, 1943, and May 7, 1943, transfers similar to that made to appellee were made to other parties, such transfers aggregating 897 bales. So, the actual importer (A. Pistorino & Co., Inc.) remained in control of only 56 bales which it withdrew from warehouse on some date which we have not found in the record. The last withdrawal by a transferee seems to have been on February 29, 1944.

On January 21, 1944, the *warehouse entry* of the entire importation was stamped "liquidated," and notice was posted in the name of A. Pistorino & Co., Inc. No reference was then made to the transfer to appellee, nor, so far as the record shows, was any notice referring to the bales transferred to appellee ever posted.

The estimated duties paid by appellee when it withdrew the merchandise for consumption were based upon the weights, clean content, etc., of the six bales, as shown in the warehouse entry but, as we understand it, there was a reweighing, or reexamination, at some later

time which eventuated in appellee receiving some refund, but, as stated in the brief for appellee before us:

The transfer entry herein and related official reports of re-weight and re-determined clean content yield did not accompany the original warehouse entry and were not considered in the liquidation of the warehouse entry on January 21, 1944   *   *   *

The papers so referred to were not finally "adjusted and verified" until October 31, 1944. The protest of appellee was filed December 29, 1944.

As stated by the trial court:

Summarized, the chronology establishes that liquidation of the warehouse entry was made after these six bales had been transferred and the merchandise withdrawn for consumption by plaintiff; that timely protest (sec. 514, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1514)) was not filed from the date of said liquidation, but the instant protest was filed within 60 days from the date of verification by the comptroller of the transfer papers relating to the instant merchandise.

The protest in the case relates to the classification and rate of duty. The collector classified it as sorted wool under paragraph 1101 of the Tariff Act of 1930 with a duty assessment of 14 cents per pound. The protest claims that it was not sorted wool and that while classifiable under paragraph 1101 the applicable duty rate is 13 cents per pound. As has been indicated, counsel for the Government concede that the collector's classification was erroneous and that the claim of the protest is correct.

So, no question as to the correctness of classification is before us, and we are concerned solely with the Government's motion to dismiss, which was stated before the trial court as follows:

The Government agrees the wool is not sorted. However, we move to dismiss this protest first on the ground that it's filed more than sixty days after liquidation.   *   *   *

We move to dismiss also because there is no authority in any law for a protest to lie against an apportionment of moneys found to be due upon a previous liquidation; and we move to dismiss on the further ground that since the transferor, the original importer of the merchandise, had no right at this time—the time these protests were filed—to file a protest, his time having expired sixty days after liquidation, the transferee could acquire, under the Customs Administrative Act of 1938, no better or further right than the transferor had.

Counsel for the Government summarizes the argument on its behalf as follows:

The court below erred in not dismissing the protest because:

(1) The liquidation of the entry on January 21, 1944, was the only decision of the collector affecting the classification of this merchandise and no protest was filed within sixty days thereof.

(2) The apportionment of duties among the several transferees was not a liquidation nor was it a decision subject to protest under Section 514.

(3) If the decision of the collector as to the apportionment of duties was a reliquidation of the entry in any sense, it did not open the entry so that a protest could be filed against the decision of the collector as to his classification of this merchandise.

It is apparent that every argument on behalf of the Government presented before us was presented before the trial court and carefully considered by it.

In its decision the trial court directed attention to the decision of this court in the case of *Eurasia Import Co., Inc.* v. *United States*, 31 C. C. P. A. (Customs) 202, C. A. D. 273, wherein we construed section 557 as amended, quoting therefrom our statement that "in clothing the transferee with the right of protest the statute obviously took that right away from the original importer so long as the transfer remained unrevoked * * *," and then commented:

To give full and proper effect to such judicial interpretation requires that statutory privileges and considerations, attendant with the right to file a protest, shall become vested with the transferee. In other words, when an irrevocable transfer like the one under consideration has been consummated, the transferee assumes the same position as that held by the original importer, subject to the same liabilities and entitled to equal statutory rights and privileges.

Applying such construction to the situation at hand, we find that the collector's liquidation of the warehouse entry on January 21, 1944, could not apply to the transferred merchandise. Such action occurred not only subsequent to the transfer of these six bales but also after plaintiff had withdrawn them for consumption and paid estimated duties. Plaintiff's [appellee's] liability had become fixed. Definite responsibility had been assumed for payment of duties even though the specific amount thereof was yet to be determined. At the same time, plaintiff had acquired every right provided by statute and customs regulations issued thereunder conveyed to the original importer.

It therefore follows that the collector's liquidation of the warehouse entry, posted in the name of the original importer and made at a time when the transfer in question had been fully completed, became final and conclusive only against the original importer and the merchandise for which he was liable. It did not extend to the six bales under consideration because such action was not a final determination of duties to be paid on the transferred merchandise. The reports relating to weight and yield of clean content of said merchandise were still pending. These reports as well as classification and appropriate rate of duty were absolutely essential for a final ascertainment of exact duty liability of the transferee, and until all of those factors were determined there could be no valid liquidation within the judicial meaning of the term as set forth in *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078, i. e., "the final computation and ascertainment of the duties due on merchandise, which computation or ascertainment is based on official reports as to the quantity, character, and value thereof."

All of the statutory elements (sec. 505, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1505)) essential to a valid liquidation were before the collector in his action of October 31, 1944, when the duty liability of plaintiff became conclusive. That the customs authorities regarded the final ascertainment of duties to be paid on the transferred merchandise as an "apportionment" is wholly immaterial and without force or effect toward determination of the present issue. To give sanction to a

practice permitting arbitrary characterization of an administrative act might not only deprive one of a positive statutory right but also do violence to an otherwise obvious congressional intent.

Possessing all the attributes of a valid liquidation, as it did, the collector's determination of duty liability of plaintiff on October 31, 1944, is entitled to the full effect of such an administrative process. As to the final ascertainment of duties to be paid on the transferred merchandise, it is the decision by the collector relating to said merchandise against which valid protest might lodge (sec. 514, Tariff Act of 1930 (19 U. S. C. 1940, ed. § 1514)), and since the instant protest was filed within the 60-day period fixed by said section 514, it is therefore timely and properly before the court. Accordingly, the motion to dismiss is denied.

In our opinion, the reasoning and, therefore, the conclusion of the trial court is sound.

It is clear that A. Pistorino & Co., Inc., having made the transfer of the six bales of wool here involved to appellee, the transaction having been completed prior to January 21, 1944, was in no position to make protest covering its classification, or covering any other element involved in liquidation (as pointed out by the trial court citing *United States* v. *Finkelstein & Kommel*, 15 Ct. Cust. Appls. 62, T. D. 42155, "classification is only 'part of liquidation' ") because it had no interest in the transferred six bales. Any protest by it purporting to cover merchandise with title to which it had irrevocably parted could have been successfully challenged by the Government.

As to the six bales of wool involved, appellee had become subject to all the liabilities relative to customs duties, etc., and had become subrogated to all the rights of protest, etc., which the importer had, and only appellee was entitled to protest.

The brief before us on behalf of the Government states:

The court may judicially notice that it is a common business practice for merchants to transfer title to goods in warehouse. The transaction is accomplished entirely by documents; the physical possession of the merchandise remains undisturbed. Under Section 557 as originally enacted [in Tariff Act of 1930] such a transfer could not be completed because for customs purposes only the original importer was recognized. Section 557 (b) [Customs Administrative Act of 1938] seeks to relieve this condition. It gives the transferor and transferee of merchandise in customs bonded warehouse an opportunity to agree between themselves that the transferee shall not only acquire ultimate title to the merchandise but that he may be dealt with by customs officials [in] every respect as if he were the original importer. The section does not purport to give him any greater rights than those possessed by the original importer.

The notice of the liquidation of January 21, 1944, posted in the name of Pistorino & Co., Inc., was not a notice to appellee, and, in our opinion, appellee was not bound to file protest within 60 days after its posting, in order to protect its rights.

As a matter of fact, the extent of appellee's liability was not determined, or at least not expressed, until the action by the collector on October 31, 1944.

Apropos the contention of counsel for the Government that section 557 (b) does not purport to give a transferee any greater rights than those possessed by the original importer, we quote the following from the decision of the trial court:

In reaching this conclusion, we do not grant any extension of right to plaintiff beyond that given to the original importer. On the contrary, we maintain, in line with the *Eurasia Import Co., Inc.,* case, *supra,* for plaintiff, as transferee, the same statutory privileges and considerations allowed an importer of merchandise. Section 557, as amended, *supra,* broadens the scope of section 514, *supra,* by adding as a party authorized to file protests the transferee of merchandise acquired pursuant to the provisions of said section 557.

We find no error on the part of the trial court and the judgment appealed from is *affirmed.*