(C. D. 988)

V. P. Roberts & Co. *v.* United States

United States Customs Court, First Division

(Decided March 7, 1946)

*Henry L. Zigel* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: The collector's classification of the instant merchandise as sorted wool and assessment of duty on the basis of clean content at the rate of 14 cents per pound under paragraph 1101 (a) of the Tariff Act of 1930, as modified by the trade agreements with Argentina (77 Treas. Dec. 138, T. D. 50504) and Uruguay (78 Treas. Dec. 169, T. D. 50786), are conceded by defendant to be erroneous, with the admission that the wool in question was not sorted and is therefore dutiable on the basis of clean content at 13 cents per pound under said modified paragraph 1101 (a), as alleged in the protest.

The case is before us by reason of a motion for dismissal which raises a highly technical and somewhat new jurisdictional question concerning the statutory term "liquidation." Government counsel presented the basis for his motion in the following form:

The Government agrees the wool is not sorted. However, we move to dismiss this protest first on the ground that it's filed more than sixty days after liquidation. * * *

We move to dismiss also because there is no authority in any law for a protest to lie against an apportionment of moneys found to be due upon a previous liquidation; and we move to dismiss on the further ground that since the transferor, the original importer of the merchandise, had no right at this time—the time these protests were filed—to file a protest, his time having expired sixty days after liquidation, the transferee could acquire, under the Customs Administrative Act of 1938, no better or further right than the transferor had. ·

The merchandise in question was obtained by plaintiff, as transferee, from a shipment of 959 bales and entered at the port of Boston by the importer, A. Pistorino & Co., Inc. The transfer was effected in accordance with section 557 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1557).

There is no dispute concerning the time of filing documents and actions taken thereon as required for proper entry, transfer, and withdrawal of the six bales of wool under consideration. Entry for warehouse (customs Form 7502) of the entire shipment was made by the original importer on January 19, 1943. Transfer to plaintiff of the bales in question was made under date of March 24, 1943 (customs Form 7505), the transfer becoming irrevocable under plaintiff's bond (customs Form 7555), duly filed. Withdrawal of the transferred merchandise was made on March 25, 1943, upon payment of estimated duties by plaintiff. The warehouse entry covering the entire shipment was liquidated on January 21, 1944, and officially posted (Customs Regulations of 1943, sec. 16.2 (d)) in the name of the original importer on the same date. Transfer papers relating to the merchandise in question were not finally adjusted and verified until October 31, 1944, and the protest was filed on December 29, 1944.

Summarized, the chronology establishes that liquidation of the

warehouse entry was made after these six bales had been transferred and the merchandise withdrawn for consumption by plaintiff; that timely protest (sec. 514, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1514)) was not filed from the date of said liquidation, but the instant protest was filed within 60 days from the date of verification by the comptroller of the transfer papers relating to the instant merchandise.

The administrative practice followed at the port of entry in ascertaining duties payable on the merchandise in question and fixing liability therefor was explained by three well-qualified customs officials—the clerk in charge of the warehouse and entry division, the deputy collector in charge of liquidations, and the assistant comptroller. Their combined testimony supports the following narration.

The collector's copy of the warehouse entry covering the entire shipment was sent to the warehouse and entry division for preparation of a so-called warehouse entry sheet upon which was set forth the name of the importer, identification marks of the bales in which the wool was imported, tariff classification of the merchandise, rate of duty, and estimated duties to be collected. Upon receipt of the required reports from customs officers (sec. 505, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1505)), the warehouse entry was tentatively liquidated on January 18, 1944, and sent for verification to the comptroller who, on the same date, returned the document to the liquidating division for formal liquidation which, as hereinabove noted, was made in the name of the original importer on January 21, 1944, no reference having been made at that time to the transferred merchandise.

The document, "Warehouse Withdrawal For Consumption," authorizing transfer to plaintiff of the six bales under consideration and marked "T–1" because it was the first of six transfers made under the warehouse entry referred to, was filed in quadruplicate and distributed as follows: The original (collector's copy) was sent to the warehouse and entry division for preparation of a transfer sheet to which was posted from the warehouse entry all data concerning the transferred merchandise; the second copy was given to the comptroller; the third went to the outside division for use in reweighing the transferred merchandise; and the fourth was delivered to the appraiser with a reexamination order attached.

Determination of actual liability for duties on the transferred merchandise was withheld pending receipt of the weigher's and appraiser's reports. Said reports, when filed, disclosed lighter weight and lower clean content of the transferred wool with consequent lesser amount of duties assessable thereon than that estimated at the time of transfer. Verification by the comptroller, based on the adjusted figures entered on the transfer sheet, resulted in refund to the transferee, or plaintiff, of a sum equal to the difference between the estimated duties and the amount found to be actually payable.

Final ascertainment of weight and clean content, with consequent determination of actual duty liability on the transferred merchandise, was regarded by the customs authorities as an "apportionment," because the calculation is based on the aggregate found at the time of liquidation of the warehouse entry covering the entire shipment.

From the foregoing factual basis, plaintiff contends that the time for filing valid protest, so far as the transferred merchandise is concerned, was not lodged until exact duty liability of plaintiff was determined. The point is presented in counsel's brief as follows:

The plaintiff acquired the right to file protest against the liquidation made by the Collector of the duties determined to be due on the transferred merchandise by final ascertainment and liquidation directed against the plaintiff. How can it be argued that the final act directed against him, i. e., final ascertainment, fixing, and liquidation of duties based upon reports and findings supplemental to those used in the liquidation of the original warehouse entry, should not be regarded as a liquidation directed solely to the plaintiff. On the other hand, it is obvious that the liquidation of the original warehouse entry on January 21, 1944, was directed solely to the original importer in order to make known to him the full extent of his liabilities thereunder in varying degrees, primary and contingent, according to the facts and circumstances attending any transfer made under said Section 557 (b) as amended. As to any transferee, it seems obvious that the statute and regulations both require a final determination by the Collector directed against each transferee, and relating solely to the merchandise so transferred. The right to protest granted to a transferee requires that all the elements of a lawful liquidation shall be observed and be present in the case of a transferee, as in the case of his transferor, the original importer.

Authority for filing the protest before us is embodied in section 557 as amended, *supra*, subparagraph (b) of which provides that "So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this act which would otherwise be possessed by the transferor."

Said amended section 557 was discussed at length in *Eurasia Import Co., Inc.* v. *United States*, 31 C. C. P. A. 202, C. A. D. 273, and in referring to the above-quoted provision therefrom, the court stated that "in clothing the transferee with the right of protest the statute obviously took that right away from the original importer so long as the transfer remained unrevoked * * *."

To give full and proper effect to such judicial interpretation requires that statutory privileges and considerations, attendant with the right to file a protest, shall become vested with the transferee. In other words, when an irrevocable transfer like the one under consideration has been consummated, the transferee assumes the same position as that held by the original importer, subject to the same liabilities and entitled to equal statutory rights and privileges.

Applying such construction to the situation at hand, we find that the collector's liquidation of the warehouse entry on January 21, 1944,

could not apply to the transferred merchandise. Such action occurred not only subsequent to the transfer of these six bales but also after plaintiff had withdrawn them for consumption and paid estimated duties. Plaintiff's liability had become fixed. Definite responsibility had been assumed for payment of duties even though the specific amount thereof was yet to be determined. At the same time, plaintiff had acquired every right provided by statute and customs regulations issued thereunder conveyed to the original importer.

It therefore follows that the collector's liquidation of the warehouse entry, posted in the name of the original importer and made at a time when the transfer in question had been fully completed, became final and conclusive only against the original importer and the merchandise for which he was liable. It did not extend to the six bales under consideration because such action was not a final determination of duties to be paid on the transferred merchandise. The reports relating to weight and yield of clean content of said merchandise were still pending. These reports as well as classification and appropriate rate of duty were absolutely essential for a final ascertainment of exact duty liability of the transferee, and until all of those factors were determined there could be no valid liquidation within the judicial meaning of the term as set forth in *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078, i. e., "the final computation and ascertainment of the duties due on merchandise, which computation or ascertainment is based on official reports as to the quantity, character, and value thereof."

All of the statutory elements (sec. 505, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1505)) essential to a valid liquidation were before the collector in his action of October 31, 1944, when the duty liability of plaintiff became conclusive. That the customs authorities regarded the final ascertainment of duties to be paid on the transferred merchandise as an "apportionment" is wholly immaterial and without force or effect toward determination of the present issue. To give sanction to a practice permitting arbitrary characterization of an administrative act might not only deprive one of a positive statutory right but also do violence to an otherwise obvious congressional intent.

Possessing all the attributes of a valid liquidation, as it did, the collector's determination of duty liability of plaintiff on October 31, 1944, is entitled to the full effect of such an administrative process. As to the final ascertainment of duties to be paid on the transferred merchandise, it is the decision by the collector relating to said merchandise against which valid protest might lodge (sec. 514, Tariff Act of 1930 (19 U. S. C. 1940, ed. § 1514)), and since the instant protest was filed within the 60-day period fixed by said section 514, it is therefore timely and properly before the court. Accordingly, the motion to dismiss is denied.

In reaching this conclusion, we do not grant any extension of right to plaintiff beyond that given to the original importer. On the contrary, we maintain, in line with the *Eurasia Import Co., Inc.*, case, *supra*, for plaintiff, as transferee, the same statutory privileges and considerations allowed an importer of merchandise. Section 557, as amended, *supra*, broadens the scope of section 514, *supra*, by adding as a party authorized to file protests the transferee of merchandise acquired pursuant to the provisions of said section 557.

Final computation and ascertainment of plaintiff's duty liability on October 31, 1944, was not a reliquidation as suggested in defendant's brief. Such a view of the collector's action at that time would imply that his liquidation of the warehouse entry had application, at least in part, to the transferred merchandise—a position we are not inclined to take.

At best the liquidation of the warehouse entry on January 21, 1944, revealed, so far as it concerned the transferred merchandise in question, a classification adopted by the collector. But classification is only "part of liquidation" (*United States* v. *Finkelstein & Kommel*, 15 Ct. Cust. Appls. 62, T. D. 42155). The weight of the instant merchandise and yield of its clean content, both protestable matters, were yet to be determined. To say that the transferee acquired the right to protest upon learning of classification only, without knowledge of actual duty liability based upon reports made mandatory under the statute, is to create the wholly untenable condition of conveying such right by piecemeal.

As hereinabove set forth, defendant concedes plaintiff's claim for classification to be meritorious. The protest is therefore sustained and judgment will be rendered accordingly.