(C. D. 1433)

EASTERN DISTILLED SPIRITS CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 17, 1952)

*Henry L. Ziegel* for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*John J. Antus*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge:  This action involves certain alcoholic beverages covered by Boston warehouse entry 4756 which was liquidated by the collector at the port of Boston on December 17, 1946, but it pertains to the refusal of the collector at the port of Boston to reliquidate such entry in conformity with this court's decision and mandate rendered on November 22, 1949. The decision was entitled *General Distilleries Corp. et al.* v. *United States*, 23 Cust. Ct. 212, Abstract 53740. Among the suits included therein were suit 131986–K, collector's protest number 6285, filed by Eastern Distilled Spirits Co., the plaintiff herein, involving 196 barrels of neutral cane spirits imported from Cuba, warehouse entry 4756, and also suit 131985–K, collector's protest number 6286, filed by Wm. Zakon & Sons, Transferees. The latter protest involved 31 barrels out of the 196 barrels of neutral cane spirits covered by said warehouse entry 4756, which had been transferred by the plaintiff, the transfer entry being entitled "entry 4756–Tr. No. 1." The entry papers disclose that these 31 barrels were released from warehouse and withdrawn by the transferee on June 5, 1946. The protest filed by the transferee involving the 31 barrels and the protest filed by the plaintiff herein involving the 196 barrels were concurrently

filed on February 14, 1947. As 31 of the barrels were the subject of protest, only 165 barrels were involved in suit 131986–K.

According to the protest papers these 165 barrels of spirits were disposed of as follows: The plaintiff withdrew on June 12, 1945, for consumption, 12 barrels; on July 16, 1945, 15 barrels; and on July 30, 1945, 48 barrels; a total of 75 barrels. On May 28, 1946, an application to "recooper * * * and remark" was granted for 89 barrels which was completed on June 3, 1946. Under date of May 28, 1946, an immediate transportation entry, I. T. 673 was filed for transshipment of these 89 barrels to the port of Pittsburgh. The consignee was noted as Joseph S. Finch & Co., Inc., Schenley, Pa. The customs inspector at Pittsburgh, on June 10, 1946, reported that the 89 barrels had been delivered to that port. It was also noted that on June 14, 1946, said 89 barrels were covered by rewarehouse entry No. 1136 and received in warehouse. Although a protest had been on file since February 14, 1947, the collector at the port of Pittsburgh reliquidated the entry only as to the internal revenue tax on November 7, 1947. The liquidation of duty by the collector at the port of Boston was not disturbed. The law, paragraph 813, Tariff Act of 1930, as amended, at that time provided specifically that there shall be no constructive or other allowance for breakage, leakage, or damage, except under certain specified conditions not applicable at any other port except the port of entry.

Suits 131985–K and 131986–K were decided by this court on November 22, 1949, in favor of the plaintiff. These decisions were promulgated after the effective date of Public Law 612, which, on June 8, 1948, amended paragraph 813, so as to read:

Notwithstanding any other provision of this Act, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes.

Of course, an amendment of the law would not ordinarily affect the liquidation of an entry which had been completed almost a year and a half before the new law became effective, except for section 2 of Public Law 612, reading as follows:

SEC. 2. This amendment shall be effective as to all such merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and shall apply also to any such merchandise entered or withdrawn before that day with respect to which the liquidation of the entry or withdrawal, the exaction, or the decision as to dutiable quantity has not become final by reason of section 514, Tariff Act of 1930.

In view of the above amendment of the law and the retroactive effect thereof, the court held that duties should be assessed upon the basis of the same quantity upon which internal revenue taxes were finally assessed. Pursuant to the decision of the court, the collector at the port of Boston reliquidated number 6286 on June 16, 1950, and assessed the duty upon the same number of gallons

used as the basis of the internal revenue tax. However, in reliquidating number 6285 on September 27, 1950, the collector assessed duty upon the basis of the number of proof gallons used to determine the internal revenue tax only upon 75 barrels which had been withdrawn from warehouse by the plaintiff and refused to reliquidate in conformity with the decision as to the quantity contained in 89 barrels which had been shipped to Pittsburgh for rewarehousing.

In the pending protest, the plaintiff claims that the collector erred in refusing to reliquidate the entry relative to the quantity of spirits contained in the 89 barrels, first, because his refusal was in violation of the judgment and mandate of this court; second, because the basis for the assessment of duties, whether under a withdrawal for consumption or a withdrawal for transportation in bond, was controlled by the liquidated duties determined in the liquidation of the entry of December 17, 1946, and that such liquidation was binding upon the collector at the port of Pittsburgh; and third, that a protest including the 89 barrels withdrawn for transportation in bond to Pittsburgh could only have been filed at the port of Boston under the laws and regulations effective at the time of the original liquidation.

At the trial, the customs liquidator at the port of Boston testified for plaintiff that the liquidation of December 17, 1946, included the computation of taxes and duties upon the 89 barrels of spirits in question; that a protest was filed against such liquidation; and that a tentative reliquidation was made in accordance with the judgment order of the court which was forwarded to the Comptroller of Customs for verification. But the Comptroller ruled that the 89 barrels should have been excluded from the reliquidation of the warehouse entry in view of the provisions of Public Law 612 and paragraph 813 of the tariff act, as amended. The witness further testified that the collector's office did not agree with the Comptroller's ruling. The case was submitted to the Bureau of Customs which ruled that the withdrawal for transportation should stand as originally liquidated and that no action should be taken. Therefore, the reliquidation was made accordingly, the court's judgment order not being carried out to the extent of the 89 barrels.

The Assistant Comptroller at the port of Boston also testified in behalf of the plaintiff that the 89 barrels of spirits in question were included in the liquidation which he verified in December 1946, and the liquidated figures of the 89 barrels were verified and then forwarded to the collector at Pittsburgh; that his office refused to accept the tentative reliquidation of the collector following the court's mandate for the reason that in the opinion of his office "there was no longer any ownership, or there had been a complete severance by transfer of this merchandise to Pittsburgh." As further authority for the action recommended, the witness referred to T. D. 51966, paragraph 5, providing that withdrawals would not be included in reliquidation of

merchandise subject to review under Public Law 612. The witness referred to said treasury decision, which was published July 14, 1948, as a special amendment or a directive. The witness admitted that such was not the procedure when the entry was first liquidated in 1946.

A copy of the Acting Commissioner's decision was admitted in evidence as exhibit 1, and also all of the papers in the case were moved in evidence.

The sections of the Tariff Act of 1930, as amended, and the regulations prescribed by the Secretary of the Treasury at issue herein provide, so far as pertinent, as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

(a) Any merchandise subject to duty, * * * may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn * * * for transportation and rewarehousing at another port or elsewhere, or for transfer to another bonded warehouse at the same port:

\* \* \* \* \* \* \*

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this Act which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. Any such transfer may be made irrevocable by the filing of a bond of the transferee in such amount and with such conditions as the Secretary of the Treasury shall prescribe, including an obligation to pay all unpaid regular, increased, and additional duties, charges, and exactions on the merchandise the subject of the transfer. Upon the filing of such bond the transferor shall be relieved from liability for the payment of duties, charges, and exactions on the merchandise the subject of the transfer, but shall remain bound by all other unsatisfied conditions of his bond. [As amended by the Customs Administrative Act of 1938.]

SEC. 523. COMPTROLLERS OF CUSTOMS.

\* \* \* \* \* \* \*

Comptrollers of Customs shall verify all assessments of duties and allowances of drawbacks made by collectors in connection with the liquidation thereof. In cases of disagreement between a collector and a Comptroller of Customs, the latter shall report the facts to the Secretary of the Treasury for instructions.

\* \* \* \* \* \* \*

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

* * * all decisions of the collector, * * * as to the rate and amount of duties chargeable, * * * and his liquidation or reliquidation of any entry, * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United

States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, * * * shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

SEC. 515. SAME.

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter remit or refund any duties, charge, or exaction found to have been assessed or collected in excess, or pay any drawback found due, of which notice shall be given as in the case of the original liquidation, and against which protest may be filed, within the same time and in the same manner and under the same conditions as against the original liquidation or decision. If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. Such determination shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law.

The regulations, as revised January 1946, provide in part as follows:

**8.33 Procedure.** * * *

* * * * * * *

(c) * * * When merchandise is withdrawn for transportation by a transferee, the collector at the port of withdrawal shall endorse the withdrawal to show whether the transferee has filed the bond provided for in section 8.39. * * *

**8.34 Value and classification; protest.**—(a) The value and duty assessed at the port of original importation and stated in the copy of the withdrawal for transportation forwarded to the port of destination shall in every case be the value and duty charged on the rewarehouse entry or, if the merchandise be withdrawn immediately on arrival, on the rewarehouse withdrawal.

(b) No protest against the assessment of duty can be received at the port of destination, except against a reliquidation made at such port, or against the refusal of the collector at that port to reliquidate under a change in the law. * * *

The regulations, as revised to December 1950, citing T. D. 52531, provide as follows:

**8.34 Value and classification; protest.**—(a) Except in the cases provided for in section 16.10 (h), the duties determined at the port where the original warehouse entry was filed shall be the duties chargeable under the rewarehouse entry or entry for rewarehouse and withdrawal for consumption.

(b) A protest may be filed at the port of destination against a liquidation made at that port under section 16.10 (h) or against the refusal of the collector at that port to liquidate pursuant to section 16.10 (h). * * *

Section 16.10 (*h*), referred to above, relates to changes in the rate of duty or internal revenue tax by act of Congress or by a proclamation of the President under the trade agreement provisions of the act on merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued. It provides that the liquidation shall be on the basis of the new rate and that, in cases of reliquidation, it shall be made in the district wherein the merchandise is in customs custody on the date of the change in rate. This section, of course, has no application to the question here before the court. Duties, therefore, under the regulations in effect at the time of liquidation, are applicable as assessed at the port of Boston except when under the provisions of section 514, *supra*, the importer, consignee, or agent of the person paying such charge or exaction files a protest against such liquidation. The law specifically provides in clear unambiguous language that the determination of the United States Customs Court, except in cases of appeal, are final and conclusive upon all persons and, upon return to the collector of the papers, with the decision and judgment order, the collector "shall take action accordingly." This the collector has failed to do, not of his own volition, but upon orders from the Bureau of Customs in Washington, D. C., which were signed by Acting Commissioner of Customs D. B. Strubinger. The following is the amazing statement of the Acting Commissioner:

The transfer of the 89 barrels to the Pittsburgh transferee was completed prior to December 17, 1946, the date of the liquidation of your warehouse entry No. 4756. The protest against this liquidation could not, therefore, include these transferred barrels since the importers had no further interest in them. Only the transferee was entitled to protest with respect to these barrels. (C. D. 988; C. A. D. 356; Abstract 53586.)

In the reliquidations under the court's decision, the decision shall be applied only to the 76 barrels remaining to the importer and to the 31 barrels transferred to Wm. Zakon & Sons. No action shall be taken in the reliquidation of warehouse entry No. 4756 with respect to the *89* barrels transferred to Pittsburgh.

Section 514, *supra*, as previously pointed out provides that an importer as well as the consignee or agent of the person "paying such charge or exaction" may file the protest. The importer in this case filed the protest. The law also specifically provides that the determination of the court shall be final and conclusive upon all persons and when the papers together with the decision and judgment are returned to the collector he "shall take action accordingly."

The plaintiff has fully established that it filed a protest against the collector's determination of the dutiable quantity. The importer's right to file the protest was not challenged before this court and a judgment was rendered in favor of the plaintiff's contention. Upon authority of the Acting Commissioner of Customs, the collector re-

fused to follow the provisions of section 514, *supra*, respecting the court's mandate. The reliquidation of the Boston collector was challenged by the plaintiff by way of protest against the collector's refusal. At the trial of this case, the Government failed to offer any defense of the collector's refusal to act. True, the Acting Commissioner of Customs remarks that the transfer of the 89 barrels was complete prior to the date of the liquidation at Boston of warehouse entry 4756, but there is nothing in the papers to establish that the consigned spirits had been transferred. All that appears is that the 89 barrels of spirits were consigned to Joseph S. Finch & Co., Inc. The withdrawal for transportation to Pittsburgh was made by the plaintiff, not a transferee. There is nothing in the evidence or record before the court to show that the plaintiff had released the consigned spirits to a transferee.

The decisions referred to by the Acting Commissioner in his letter advising the collector to disregard the mandate of this court as to the 89 barrels of spirits in question are not in point in this case.

In *V. P. Roberts & Co.* v. *United States*, 16 Cust. Ct. 78, C. D. 988, the Government had moved to dismiss the protest brought against the collector's assessment of duty upon certain wool, first, upon the ground that it was filed more than 60 days after liquidation, and second, because the importer of the merchandise, who was the transferor, had no right to file a protest, his time having expired 60 days after liquidation, and, therefore, the transferee, the plaintiff in that case, could acquire no better right than the transferor had.

There, the transferee had withdrawn the merchandise from warehouse upon payment of the estimated duties by the transferee. The liquidation of the entry thereafter made was posted in the name of the original importer. The transfer papers relating to the merchandise were not finally adjusted and verified until more than 9 months after liquidation, but the protest was filed within 60 days after such final adjustment. The court held that the protest was validly filed and overruled the motion to dismiss, stating in part as follows:

* * * when an irrevocable transfer like the one under consideration has been consummated, the transferee assumes the same position as that held by the original importer, subject to the same liabilities and entitled to equal statutory rights and privileges.

Applying such construction to the situation at hand, we find that the collector's liquidation of the warehouse entry on January 21, 1944, could not apply to the transferred merchandise. Such action occurred not only subsequent to the transfer of these six bales but also after plaintiff had withdrawn them for consumption and. paid estimated duties. * * *

It therefore follows that the collector's liquidation of the warehouse entry, posted in the name of the original importer and made at a time when the transfer in question had been fully completed, became final and conclusive only against the original importer and the merchandise for which he was liable. It did not extend to the six bales under consideration because such action was not a final determina-

tion of duties to be paid on the transferred merchandise. The reports relating to weight and yield of clean content of said merchandise were still pending. These reports as well as classification and appropriate rate of duty were absolutely essential for a final ascertainment of exact duty liability of the transferee, and until all of those factors were determined there could be no valid liquidation * * *.

In reaching this conclusion, we do not grant any extension of right to plaintiff beyond that given to the original importer. On the contrary, we maintain, in line with the *Eurasia Import Co., Inc.*, case, *supra*, for plaintiff, as transferee, the same statutory privileges and considerations allowed an importer of merchandise. Section 557, as amended, *supra*, broadens the scope of section 514, *supra*, by adding as a party authorized to file protests the transferee of merchandise acquired pursuant to the provisions of said section 557.

Upon appeal by the Government, *United States* v. *V. P. Roberts & Co.*, 34 C. C. P. A. 135, C. A. D. 356, the appellate court sustained the action of this court in denying Government's motion to dismiss. The case of *V. P. Roberts & Co.* v. *United States*, 23 Cust. Ct. 178, Abstract 53586, followed the foregoing case in holding that the time for such transferee to file a protest does not begin to run until exact duty liability on the transferred merchandise has been determined.

The case of *Marshall Field and Co.* v. *United States*, 34 C. C. P. A. 141, C. A. D. 357, which was decided concurrently with the *Roberts* case, *supra*, involved certain yarns which the Abbot Worsted Co., manufacturer of yarn from wools, imported conditionally free under the provisions of paragraph 1101 (b) of the Tariff Act of 1930, as amended by the Customs Administative Act of 1938, under bond to insure that "any wool or hair entered or withdrawn thereunder shall be used only in the manufacture of press cloth, camel's hair belting, knit or felt boots, heavy fulled lumbermen's socks, rugs, carpets, or any other floor covering." The appellant Field purchased 25,000 pounds of such wool from the Abbot Co. Such company shipped 29 bales containing 7,028 pounds of yarn, but the ship carrying same went aground off the coast of Massachusetts and 21 of the bales of yarn were jettisoned. The 21 bales were subsequently recovered by the insurance underwriters after being submerged in salt water for 2 weeks. After laundering, these 21 bales were sold at public auction. The eight undamaged bales were delivered to the appellant. The purchaser of the 21 bales offered to sell the yarn to the appellant, but the offer was rejected inasmuch as the yarn had become unsuitable for use in the manufacture of floor coverings. The yarn was ultimately utilized for the manufacture of sweaters, fringes for baby carriage covers, and in hand netting or hand-framed weaving.

Both Abbot and Field had filed bonds stating that they expected to enter or withdraw the wool conditionally free. Abbot signed a certificate evidencing a transfer of the 29 bales to Field, and such bales were charged against the bond of Field and credited on the bond of Abbot. At request of the collector, Field filed an affidavit giving complete information concerning the disposition and use of the 29

bales. Thereafter, the collector demanded of Field the specific duty applicable to the yarn and also an ad valorem duty upon the value of the yarn. The collector's demand was paid under protest. Upon such facts, the court stated:

The crucial issue of this appeal is whether or not appellant was liable under its bond for the payment of the duties imposed by the collector.

The court construed the provisions of the act relative to the bonds given for performance within the meaning of the paragraph and the conditions of the obligation under the bond, holding that the conditions of the bond were made a part of the paragraph. The court also held that the conditions of the bond were violated and that the appellant was liable, stating as follows:

* * * The statute is clear and specific in fixing responsibility for the payment of duty, not on the owner or possessor of the goods, *but upon the party bound to insure the proper use or transfer for use of the goods.* [Italics quoted.]

It is inconceivable to the court how the Acting Commissioner could possibly interpret the foregoing decisions as having any color of authority for directing the collector to disregard the mandate of this court relative to the 89 barrels of spirits in question as not within the purview of the protest filed by the importer of record in this case. It is clear that under the provisions of law or the regulations, no authority could be found for the issuance of such instructions. Under the law, it was the duty of the collector of customs at the port of Boston to liquidate the entry. Under that liquidation, the rights and liabilities of the Government, as well as the importer of record, were determined. Those rights and liabilities were fixed by statute, subject only to the filing of a timely protest, and, if so filed, to the retroactive provisions of Public Law 612, *supra,* relative to the dutiable quantities of alcoholic liquors. The amendment of the regulations long after the liquidation of the entry would have no effect in changing the rights and liabilities of the parties arising from the liquidation, even though such regulations were applicable to the question at issue and were to be regarded as an authority for the collector's action herein. However, as heretofore stated, such amended regulations do not apply here.

It is the holding of this court that the duties assessed at the port of Boston, as liquidated on December 17, 1946, were applicable to the 89 barrels of spirits in question; that a protest against such liquidation was regularly filed by the proper party; and that a decision as to the dutiable quantity was regularly rendered by this court having jurisdiction of the subject matter. Therefore, judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry as to said 89 barrels of spirits in accordance with the decision and judgment of this court promulgated on November 22, 1949, and to refund all duties taken in excess.