(C. D. 2040)

MONTE CASSINO WINE CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 17, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: Plaintiff states that the protest in this case has been filed for the purpose of determining "whether an importer (of merchandise transported in bond under customs supervision from a bonded warehouse on the border to a bonded warehouse at an inland port where it is entered for consumption) at an inland port had a right under the laws and regulations existing in 1944 to receive formal official notice (liquidation notice) at the inland port (like importers clearing merchandise at border ports) about the details used by the collector of customs at the inland port to determine the rate and amount of duties finally determined to be due on the entry made by that importer at that inland port."

The parties have stipulated facts essential to a decision. Pertinent portions of the stipulation are as follows:

.   .   .   .   .   .   .

1. The merchandise under protest consisting of seventy-five (75) pipes of Ruby Port Wine from Portugal, arrived at Philadelphia, Pennsylvania, and was placed in bonded warehouse under Philadelphia Warehouse Entry No. 6811 dated January 14, 1944, Many Blanc and Co., Inc. being noted as the importer of record, . . .

.   .   .   .   .   .   .

3. That said wine was transported in bond in three railroad cars to Cincinnati, Ohio, under Philadelphia Withdrawal for Transportation No. 0743 dated February 16, 1944 . . .

4. That said wine was entered and withdrawn at Cincinnati by the Monte Cassino Wine Co., Inc. under Combined ReWarehouse Entry and Withdrawal (Customs Form 7519) ReWarehouse Entry No. 183, Withdrawal No. 210, both Nos. dated March 9, 1944, which said document was prepared by the consignee, Monte Cassino Wine Co., . . . duties and taxes were demanded by the Collector of Customs and were paid at the time of withdrawal: . . .

5. That when said wine was withdrawn from warehouse for consumption at Cincinnati under said ReWarehouse Entry No. 183, Withdrawal No. 210, it was regauged by the Collector of Customs at Cincinnati for internal revenue taxable quantities only (the first and only gauge taken by the Collector of Customs at

Cincinnati). The report of the results of the regauge was forwarded by the Collector of Customs at Cincinnati to the Collector of Customs at Philadelphia. . . .

6. Subsequent to the receipt of the report of the results of regauge (the regauge made at Cincinnati for ascertainment of internal revenue taxable quantities only) from the Collector of Customs at Cincinnati, Ohio, the Collector of Customs at Philadelphia liquidated Warehouse Entry No. 6811 on December 27th, 1944, the liquidation being made at Philadelphia in the name of Many Blanc and Co., Inc., the importer of record of said entry. The Collector of Customs at Philadelphia then forwarded to the Collector of Customs at Cincinnati, Ohio, an amended copy of Withdrawal for Transportation No. 0743, which document specifies the gallonage and monetary amounts for both duty and internal revenue tax purposes, as determined from the results of the above liquidation of Warehouse Entry No. 6811, . . .

7. Upon receipt of said amended Withdrawal for Transportation No. 0743, the Collector of Customs at Cincinnati, Ohio, balanced Combined ReWarehouse Entry and Withdrawal No. 183 and found a duty refund of $1431.76 and an internal revenue tax refund of $1819.17 due the Monte Cassino Wine Co., Inc., which said amounts were duly refunded. . . .

8. On May 28, 1952, Tompkins & Tompkins, on behalf of the Monte Cassino Wine Co., Inc., by a letter directed to the Deputy Collector of Customs at Cincinnati, Ohio, which said letter was forwarded by the Deputy Collector of Customs at Cincinnati, Ohio to the Collector of Customs at Cleveland, Ohio (headquarters port for Cincinnati), demanded that the Collector ascertain, fix and liquidate the rate and amount of duties and internal revenue taxes to be paid on the wine covered by Cincinnati ReWarehouse Entry No. 183 dated March 9, 1944, which said letter may, with the consent of the court, be received in evidence. On June 16, 1952 and June 25, 1952, by letters to Tompkins & Tompkins, . . . the Collector of Customs at Cleveland, Ohio declined to ascertain, fix and liquidate the rate and amounts of duties and internal revenue taxes on the wine covered by ReWarehouse Entry No. 183 dated March 9, 1944 or to take any further action in the matter.

9. The plaintiff herein, Monte Cassino Wine Co., Inc., by Tompkins & Tompkins, on July 17, 1952 filed the instant protest.

The foregoing stipulation and the various papers referred to therein were offered and received in evidence. It will be noted that the liquidation mentioned in the stipulated facts occurred approximately 8 years prior to the filing of this protest.

Defendant has moved to dismiss upon the grounds (1) that no protest was ever filed against the liquidation made by the collector of customs at Philadelphia, Pa., the port of importation and first entry, and (2) that the protest under consideration is not authorized by any provision of the law and is not within the jurisdiction of this court. Both parties have submitted briefs and reply briefs upon this motion.

We address ourselves initially to the first ground upon which defendant's motion to dismiss is predicated. Its validity as a basis for dismissal is, in our opinion, dependent upon whether the liquidation

of the original warehouse entry made in the name of the importer of record by the collector at Philadelphia was binding on the plaintiff. We are constrained to the view that it was.

The collector of customs is required "upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement" to "ascertain, fix, and liquidate the rate and amount of duties to be paid on . . . merchandise" according to law and to "give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation." (19 U. S. C., § 1505 (§ 505, Tariff Act of 1930).)

The Secretary of the Treasury is authorized to make rules and regulations necessary to carry out the provisions of the Tariff Act of 1930. (19 U. S. C., § 1624 (§ 624, Tariff Act of 1930).) In pursuance of this authority, regulations have been issued delineating procedures to be followed by importers and customs officials in connection with imported merchandise entered for warehouse at the original port of importation and entry and withdrawn for transportation to another port of entry. These regulations, unless shown to be unreasonable or invalid, have the force and effect of law. *Maple Leaf Petroleum, Ltd.* v. *United States,* 25 C. C. P. A. (Customs) 5, T. D. 48976; *United States* v. *Astra Bentwood Furniture Co.,* 28 C. C. P. A. (Customs) 205, C. A. D. 147; and *Standard Oil Co. of Louisiana* v. *United States,* 33 C. C. P. A. (Customs) 152, C. A. D. 329.

The regulations necessary to our determination, in pertinent part, provide:

Customs Regulations of 1943—

**16.1 Liquidation required.**—All entries covering imported merchandise, except those for transportation in bond or for immediate exportation, shall be liquidated.

**16.2 Procedure; notice of liquidation.—** . . .

.        .        .        .        .        .        .

(g)   The bulletin notice of liquidations, . . . shall be posted at the port of entry, though it may have been prepared at the headquarters port.

.        .        .        .        .        .        .

**18.17 Withdrawal procedure.**—(a) Merchandise may be withdrawn for transportation prior to liquidation of the warehouse entry. In such cases the transportation entry . . . shall show any ascertained weight, gauge, or measure, the entered value of the particular merchandise covered by the withdrawal, and the estimated duty.

**18.18 Forwarding procedure; procedure at destination.—** . . .

.        .        .        .        .        .        .

(c)   *The liquidation of the original warehouse entry shall be followed* . . . . When the merchandise has been withdrawn for consumption prior to the receipt of the

notice of liquidation from the original port, differences of less than $1 . . . shall be disregarded. [Emphasis supplied.]

**8.34 Value and classification; protest.**—(a) *The value and duty assessed at the port of original importation* and stated in the copy of the withdrawal for transportation forwarded to the port of destination shall in every case be the value and duty charged on the rewarehouse entry or, if the merchandise be withdrawn immediately on arrival, on the rewarehouse withdrawal. [Emphasis supplied.]

(b) No protest against the assessment of duty can be received at the port of destination, except against a reliquidation made at such port, or against the refusal of the collector at that port to reliquidate under a change in the law.

It is obvious that in the ordinary case of merchandise entered for warehouse and subsequently withdrawn for transportation in bond to another port of entry, the regulations in effect at the time of this importation imposed the duty of liquidation upon the collector at the port of importation and first entry (*Eastern Distilled Spirits Co. v. United States*, 28 Cust. Ct. 335, C. D. 1433) and the duty of following that liquidation, except in certain situations not here applicable, upon the collector at the port of destination. The designated language preceding entry on customs Form 7519 indicates that the merchandise has been previously entered. Customs Form 7519 is entitled "combined rewarehouse entry and withdrawal," and it is felt that it does not fall within the meaning of the word "entries" referred to in section 16.1, *supra*. Plaintiff has not cited us to any case in which there has been a liquidation of a rewarehouse entry and the court is not informed of any.

Plaintiff, by certain questions posed in its brief, implies that the bulletin notice of liquidation was posted at Philadelphia, but the liquidation was made and the duties and taxes were collected at Cincinnati. And the claim is made that such a liquidation is illegal. This suggestion of a liquidation by the Cincinnati official is refuted by the agreed facts. The litigants have stipulated that the collector at Philadelphia liquidated the original warehouse entry covering the imported wine, and sent to the Cincinnati collector the monetary amounts due for duties and internal revenue taxes as determined in the liquidation. Upon receipt of this information, the latter official "balanced" the combined rewarehouse entry and withdrawal. This balancing, as far as we can ascertain from an inspection of the documentary evidence, was for the purpose of determining the amount of tax and duty refund due plaintiff and consisted of nothing more than deducting the duties and taxes ascertained in the Philadelphia liquidation from the estimated duties and taxes paid at the time the merchandise was withdrawn for consumption. The action on the part of the customs official at Cincinnati did not constitute a liquidation which has been judicially defined as the "final computation and ascertainment of the

duties due on merchandise, which computation or ascertainment is based on official reports as to the quantity, character, and value thereof." See *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078.

We find untenable the assertion that plaintiff had no right under the law or the regulations to inspect the Philadelphia entry paper to gain details of the liquidation. Though plaintiff was neither the "importer" nor the "consignee" under the original warehouse entry, it could have sought from the importer of record a power of attorney granting it authority to file a protest at Philadelphia against the liquidation made at that port. The right of access to the entry papers containing the facts of the liquidation is, in our opinion, correlative with the right to protest, and this court has, in substance, so held. See *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C. D. 1379, and *The Lansdowne Distillery* v. *United States*, 39 Cust. Ct. 190, C. D. 1925. If this were not so, a protestant could not intelligently chart his action with regard to a liquidation and set forth distinctly and specifically the reasons for his objection thereto, as required by statute. 19 U. S. C., section 1514 (§ 514, Tariff Act of 1930).

Moreover, if as plaintiff stoutly contends, it occupied with relation to this importation of wine the position of a transferee within the meaning and intent of 19 U. S. C., section 1557 (b) (§ 557 (b), Tariff Act of 1930), as amended by the Customs Administrative Act of 1938,[1] plaintiff was vested not only with the right to file a protest against the liquidation made in Philadelphia, but with all the statutory privileges and considerations attendant upon such right that the transferor had. *United States* v. *V. P. Roberts & Co.*, 34 C. C. P. A. (Customs) 135, C. A. D. 356; and *V. P. Roberts & Co.* v. *United States*, 23 Cust. Ct. 178, Abstract 53586. This is not tantamount to saying, however, that a transferee is entitled to have a separate liquidation made in his behalf, and the cited cases are not authority for that proposition. Even if they were, the rule would not be applicable in the posture of the instant case, since we find no documentary evidence to establish that the consigned goods had been transferred to plaintiff, and the claim that a statutory transfer had occurred is vigorously controverted by defendant.

Plaintiff complains that it was not given notice of the Philadelphia liquidation. There is nothing in the record to show that plaintiff's relationship to the imported goods was such as to entitle it to notice.

---

[1] SEC. 557. (b) The right to withdraw any merchandise . . . may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this Act which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. . . .

Plaintiff states that it is unconstitutional to have one kind of liquidation for inland ports and another for border ports, and cites "Article I, Section 9, Paragraph 5 of the Constitution of the United States." This case does not involve two kinds of liquidation—one for inland ports and another for border ports. Also, Article I, Section 9, paragraph 5, provides that "No Tax or Duty shall be laid on Articles exported from any State," and the court does not consider a shipment of merchandise from the State of Pennsylvania to the State of Ohio an export. "Export," within Article I, Section 9, paragraph 5, means the transportation of goods from the United States to a foreign country. *West India Oil Co.* v. *Sancho*, 108 F. 2d 144, affirmed, 61 Sup. Ct. 90, 311 U. S. 20.

We find that a liquidation of the warehouse entry covering the imported wine was made by the collector at Philadelphia as was required by the law and regulations in effect at the time of the importation in 1944. We have been referred to no statute, treasury regulation, or judicial decision which would require another liquidation and assessment of duties and taxes upon the same merchandise by the collector at Cincinnati.

We, therefore, find that the Philadelphia liquidation was binding upon the plaintiff, and, since no protest was filed expressing dissatisfaction with it, the liquidation became final and conclusive upon all persons including the plaintiff within 60 days thereafter under 19 U. S. C., section 1514 (§ 514, Tariff Act of 1930).

The protest is dismissed.

Judgment will be rendered accordingly.