## UNITED STATES v. FRANKLIN SUGAR REFINING CO.

### (Circuit Court, E. D. Pennsylvania. April 14, 1905.)

### No. 22.

**1. CUSTOMS DUTIES—PROTEST—TIMELINESS—TENTATIVE LIQUIDATION.**
    Where, under instructions of the Secretary of the Treasury, and upon due notice to the importers, an entry of imported merchandise was tentatively liquidated, while the final liquidation was held in abeyance over a year, pending the possibility of a change of rates, *held*, that the final liquidation was the liquidation within 10 days after which the importers might legally file a protest, under section 14, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933].

**2. SAME—PROTEST AGAINST TENTATIVE LIQUIDATION.**
    Where an importer filed a protest against a tentative liquidation of an entry, this action does not preclude him from filing another protest against the final liquidation subsequently, regardless of whether, at the time of making the first protest, he regarded the first liquidation as final, and not tentative.

On Application for Review of a Decision of the Board of United States General Appraisers. G. A. 5,294, T. D. 24,266.

These proceedings relate to a decision of the Board of General Appraisers, which reversed the assessment of duty by the collector of customs at the port of Philadelphia on merchandise imported by Franklin Sugar Refining Company.

Wm. M. Stewart, Jr., and J. Whitaker Thompson, for the United States.

John G. Johnson, for importer.

HOLLAND, District Judge. The defendant in this case imported two cargoes of raw sugar from France, one per S. S. Vimeira and the other per S. S. Wildcroft, in April, 1897. The sugar was assessed with a duty under paragraph 182½, Tariff Act Aug. 28, 1894, c. 349, § 1, Schedule E, 28 Stat. 509, and there was imposed upon the same both the regular duty therein provided for sugar of the class imported and an additional duty of one-tenth of one cent per pound as further provided for in said section when imported sugars "are the product of any country which at the time the same are

exported therefrom pays directly or indirectly a bounty on the export thereof." Upon the arrival at Philadelphia of both of these vessels the entries were liquidated by the collector at this port. For the Wildcroft the liquidation took place on June 13, 1897. On July 7, 1897, a certain correction was made in this liquidation by the collector, and was stamped upon its face, "Subject to change of rates if required by law," in accordance with a circular issued by the Secretary of the Treasury on April 5, 1897, requiring the liquidation of sugar upon which the exporting country paid a bounty to be so stamped, and the circular instructed the customs officers to delay until further orders final liquidation of entries that arrived after the 1st day of April, 1897, and expressly exempted any entries of merchandise which was purchased and directed by the owner to be shipped for import into the United States by any person prior to April 1, 1897. Against this liquidation the importers filed a protest July 16, 1897, making as their only claim the refusal of the collector to allow a cash discount in estimating the dutiable value of the cargo. There was no protest made against the countervailing duty of one-tenth of one cent per pound at this time.

France, the country from which this sugar was imported, passed an act allowing exporters of sugar a certain bounty, which went into effect April 7, 1897, after these two cargoes of sugar had been shipped, and no protest was entered by the defendant against the assessment of one-tenth of one cent per pound in the tentative liquidation made by the collector on June 13, 1897, although it had not received any bounty upon either cargo of sugar, but subsequent to the first protest filed on July 16, 1897, to the tentative liquidation by the collector, the Board of General Appraisers filed an opinion on October 30, 1897, in which they held that no bounty was payable on sugar exported from France prior to April 7, 1897, and therefore the United States was not entitled to assess an additional duty of one-tenth of one cent per pound on such sugar.

The order of the Secretary of the Treasury of July 5, 1897, requiring the tentative liquidation to be stamped "Subject to change of rates if required by law," had been revoked, as the reasons for continuing the order no longer existed, and on July 28, 1898, a final liquidation was made by the collector of the duty upon the Wildcroft's cargo. On July 30, 1898—within 10 days thereafter—the defendant company filed a protest against this final liquidation on the ground that the additional duty of one-tenth of one cent per pound was charged on the cargo contrary to law. A similar protest was filed for the same reason to the final liquidation made in regard to the cargo of the Vimeira. The government contends that as to the Wildcroft the liquidation made July 7, 1897, by the collector was the final liquidation, against which all objections should have been raised by protest within 10 days, under section 14, Act June 10, 1890, c. 407, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], and that all questions not then raised could not subsequently be raised or considered upon the liquidation which took place July 28, 1898. The defendant claims, however, that the latter assessment was the final liquidation, against which a protest could be made for

any claim whatsoever, and on appeal the Board of General Appraisers so held.

I am of the opinion that the board is clearly right in so holding, and that the first liquidation must be regarded as tentative. It was stamped "Subject to change of rates if required by law," and this notice could mean nothing else than that the government did not consider this assessment final. The final decision of the collector as to "rates and amount of duties chargeable upon imported merchandise," against which the importer is required to file his protest, under section 14, "within ten days" after such decision, must necessarily be a final decision, and he is not permitted to give this notice "before" such ascertainment and liquidation of duties. The importer is thus notified by section 14 of the act of June 10, 1890, that he cannot enter his protest before such "rates and amount of duties" are ascertained and liquidated by the final decision of the collector. It will be disregarded if entered too soon. In re Bailey (C. C.) 112 Fed. 413. Prior to the passage of the act of 1890 a protest could be filed any time after entry and duties estimated thereon. The final liquidation was regarded as only fixing the limit beyond which notice shall not be given. Davies v. Miller, 130 U. S. 284, 9 Sup. Ct. 560, 32 L. Ed. 932. In order to avoid the inconveniences of this practice, the act was passed by inserting the words "but not before" in section 14. So that the legislation on this subject shows it has been the constant aim of the government to confine the time of protest to "within ten days from final liquidation," and to prevent it from being filed either "before" such "final ascertainment" or after the expiration of the 10 days. When the government liquidated the entry of the Wildcroft and placed a notice upon that liquidation that it was "subject to change of rates if required by law," they gave notice that it was not a final decision of the collector. It is urged, however, that the importer must have regarded this as a final, and not a tentative liquidation, because he filed a protest on July 16, 1897. It may be that the importer so regarded this liquidation at that time; but, even if this be true, the government should not be permitted to escape the effect of its own act in notifying importers that these liquidations were not final. The government must be bound by its intention in this regard, and not be permitted to take advantage of a misconstruction put upon its acts by an importer in the first instance, and to say to him that, because he acted in a way to indicate that he regarded the first liquidation as final, therefore he must be held to that, notwithstanding the fact that it was not so intended or acted upon by the government, and notwithstanding the further fact that the importer before the expiration of 10 days from the "final adjustment" took a different view of the question as to the time within which he was required to file his notice, and assumed, as the government intended, that the first assessment was only tentative, as the notice stamped thereon indicated; that the liquidation of July 28, 1898, was final, and fixed the time within which a valid protest could be entered. It is not the case of a reliquidation pursuant to a decision of the Board of General Appraisers, where the protestant is bound by the

original ground of protest, as in Stern v. the United States (C. C.) 77 Fed. 607. It is a case where, by reason of instructions of the Secretary of the Treasury, a tentative liquidation was made, and notice of that fact served upon the importer, who at the final adjustment raised such questions as suggested themselves to him, and he should be heard. The government, by its notice, created an unusual situation as to the final liquidation of these entries, and any doubt for which it is responsible should be resolved in favor of defendant. A similar technical objection taken by the government was overruled in the case of Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269.

The ruling of the Board of General Appraisers in both cases is affirmed.