**No. 58434.**—Dart Export Corp. *v.* United States, protest 217561–K/14225 (New Orleans).

FORD, Judge: The protest in this case is couched in the following language:

New Orleans 12
July 25, 1953

Collector of Customs,
New Orleans District,
New Orleans, Louisiana.

## PROTEST

RE: Consumption Entry No. 541, dated July 27, 1951, covering 2 cases Perlon Artificial Gut from Germany, arriving aboard s/s AMERICAN HARVESTER 7/14/51 at New York, and entered at New Orleans

Dear Sir:

As attorneys for Dart Export Corporation, now liquidated and dissolved, consignee of the above goods; Anthony B. Bowers, Customs House Broker, who cleared the above shipment; and Globe Indemnity Company, surety on the bond; we protest your claim for additional duty on the above in the amount of $98.95, as per your Notice No. 667502, dated June 23, 1953, for the following reasons:

Entry No. 541, covering the above 2 cases of goods, was made at the New Orleans Customs House on July 27, 1951, and duty in the amount of $78.80 was paid under paragraph 1558 on the same date, being 20% ad valorem, the rate then in effect, and which rate was assessed in accordance with a written opinion from the Commissioner of Customs in Washington.

On or before August 15, 1951, the goods which had been in the custody of the Appraiser's Store, Customs House, New Orleans, were released to the importer, having been inspected, examined, measured, tested and otherwise looked at by the Appraiser, and no notice was given at that time of any extra or additional duty being due. It must be presumed, therefore, that the rate and amount of duty was "ascertained, fixed and liquidated" not later than August 15th, 1951, (the date of release of the goods to the importer) and the prescriptive period set out in section 514 of the Tariff Act of 1930 began to run as of that date.

On October 15, 1951, no "reliquidation" of the entry having been made, and 60 days having elapsed and there being no question of fraud involved, the rate and amount of duty paid at the time of entry became binding on all parties, including the Government, in accordance with the clear provisions of Section 514 of the Tariff Act of 1930.

Now, almost two years later, the Collector of Customs comes back to the importer and other parties involved and says, in effect: "We have liquidated Entry No. 514, and find that in accordance with a new ruling the rate of duty on the goods in question should have been assessed at 45%, under paragraph 1301, and not at 20% under paragraph 1558, and you therefore owe the Collector an additional $98.95."

Your claim is apparently based on the theory that the Collector may "liquidate" at any time—2 years, as in the present case, or 10 or 15 years after release of the goods to the importer, notwithstanding the clear intent of the Tariff Act of Sec. 514 of 1930 to limit such "liquidations" or "reliquidations" to a period 60 days after the original liquidation. In short, your claim is apparently based on the contention that a "liquidation" is the act of stamping the entry "liquidated", and that such stamping of the entry can take place at any time after the entry is made.

We agree that the stamping of the entry may take place at any time. That is the business of the Collector. But we deny that the "liquidation" referred to in the Tariff Act of 1930 refers to such stamping. In fact, it has been held on a number of occasions that the words "ascertain, fix and liquidate", as used in the act, all mean the same thing. Therefore, the liquidation referred to in the act is a *mental determination*, not a physical stamping of a piece of paper.

Now, since the operation of a large Customs House, such as the one in New Orleans, is a complex procedure, involving many people, it is impossible to say with accuracy when such a mental determination is made, or by whom. It therefore becomes necessary to choose a physical act which will fix with accuracy the date of "liquidation", and from which act the Collector of Customs must be *conclusively presumed* to have liquidated the entry.

Present procedure, apparently, takes the date of stamping the entry as the date on which it must be conclusively presumed that the liquidation has taken place, and the contention is made that such stamping may take place *at any time*. A careful reading of the Tariff Act of 1930, however, indicates that it was the clear intent of Congress that the Collector should *"ascertain, fix and liquidate" the rate and amount of duty on receipt of the Appraiser's report.* See Section 505 of the Act. When the goods are released to the importer from the Appraiser's store, it must be conclusively presumed that such report has been rendered, and that the Collector has "liquidated" the entry in fact on that date.

For the above reasons, it is submitted that the Collector's claim in this case comes too late. It is our belief that the Supreme Court of the United States has never passed on this very important question, which affects not only this small case, but an untold number of larger cases. It is conceivable that present procedure keeps out hundreds of millions of dollars worth of imported merchandise each year, by making the business of importing so uncertain and hazardous that many potential buyers of foreign goods refrain from purchasing at all.

We contend that present procedure is violative of Constitutional rights, and is an invalid device for keeping out foreign goods in a way not contemplated by the framers of the Constitution. It is invalid, further, for the reason that it was definitely not contemplated by the Congress when they passed the Tariff Act of 1930.

We believe that this question is of such vast importance, not only to those engaged in the business of importing, but also to economy of the whole country, that the matter should be brought before the Supreme Court of the United States as quickly as possible.

We therefore request that you take the quickest possible action on this protest, bearing in mind that we are protesting this claim on *the sole, single issue of date of liquidation, and not on any other ground.* For this purpose, it is not necessary that the record be cluttered up with all sorts of irrelevant data and evidence.

Please handle it as expeditiously as possible.

Yours very truly,

DART, GUIDRY & PRICE
[Signed] per Henry P. Dart III
[Typed] Henry P. Dart, III

Before considering this case on the merits, in view of the statement in the protest that "As attorneys for Dart Export Corporation, now liquidated and dissolved," we deem it appropriate to give consideration to the question of whether or not this protest was filed by the proper party. With reference to this phase of the case, the following appears in 1 Corpus Juris, page 134:

*In the absence of a statute to the contrary* the effect of the dissolution of a corporation pending an action commenced by it, whether the dissolution be by expiration of its charter, repeal by legislative act, valid decree of court, or otherwise, is, according to the great weight of authority, to abate the action, for a corporation cannot, any more than a dead person, prosecute an action after it has ceased to exist; and the same is true of the dissolution of a corporation pending an action against it. [Italics ours.]

However, in volume III, 1954 edition of Martindale-Hubbell Law Directory under the title "Louisiana Law Digest," the following appears:

All corporations, whether they expire by limitation or otherwise, are continued as bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them to liquidate their affairs.

When a proceeding for dissolution has been commenced, all the rights, powers and duties of the officers and board of directors are vested in the liquidator or liquidators appointed by the shareholders or the court, and the authority and duties of the officers and directors of the corporation cease except as, in the opinion of the liquidator or liquidators, it is necessary that they be continued. * * *

In view of the foregoing, we have no hesitancy in holding that this protest was filed by the proper party, and that this court has jurisdiction to determine the questions raised thereby.

The collector classified the merchandise as "Filaments of synthetic textile, single 'others', over 150 deniers" under paragraph 1301 of the Tariff Act of 1930 and levied duty thereon at the rate of 45 percent ad valorem. The claims and contentions of the plaintiff are fully set forth in the protest, copied above, from which it appears that the plaintiff is "protesting this claim on the sole, single issue of date of liquidation, and not on any other ground." With the protest thus limited, we need consider only the question of whether or not the liquidation in this case was made in conformity with the applicable statutes.

The facts in this case are in substantial accord with the allegations contained in the protest, and since there is no dispute regarding the facts, a detailed statement of the evidence supporting the allegations would serve no useful purpose. We shall, therefore, refer to the evidence only when deemed necessary.

In the interest of clarity and a complete understanding of the question here presented, section 514 of the Tariff Act of 1930 is here set forth as follows:

## SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

In his brief filed herein, counsel for the plaintiff makes the following statement:

In the instant case it is clear that both the appraisement and the liquidation were made after unreasonable delays, and the originally "estimated" duties must be considered as "liquidated duties", in view of Section 514 of the Tariff Act of 1930 which provides that all decisions of the Collector are final and conclusive after 60 days, and the evidence adduced herein which clearly shows that the "estimated" rate of duty of 20% ad valorem was the estimate of the Collector or his deputy, and not the estimate of the importer. The estimated duty being a decision of the Collector, it became final and conclusive after 60 days in the absence of any further action on the part of the collector, and in absence of fraud.

In *E. Fucini & Co., Inc.* v. *United States*, 4 Cust. Ct. 174, C. D. 317, this court stated:

\* \* \* "Liquidation" has a well-defined meaning in customs matters, and in *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078, it was said to be—

—the final computation and ascertainment of the duties due on merchandise, *which computation or ascertainment is based on official reports as to the quantity, character, and value thereof* \* \* \*. [Italics added.]

In *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164, it was held that:

"Liquidation," as defined by article 820 (*a*) of the Customs Regulations of 1931, is *"the final computation or ascertainment of the duties accruing"* on merchandise imported under the Tariff Act of 1930. [Italics ours.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We are unable to find anything in the Tariff Act of 1930 to indicate that the Congress intended that section 505, *supra*, should not apply to all imported merchandise entered for consumption under that act, including all such as was made dutiable thereunder by virtue of the provisions of section 315, *supra*. Had the Congress intended that consumption entries covering merchandise made dutiable under the Tariff Act of 1930 by the express provisions of section 315 might be liquidated or the rate and amount of duties ascertained and fixed in any manner other than that provided in section 505 it certainly would have said so. So, whatever the law may have been prior to the enactment of the provisions of section 505, *supra*, which first appeared in the Tariff Act of 1922, under those provisions and the provisions of section ·514, *supra*, all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie.

The question presented by this protest appears to have been presented to the courts as early as 1905 and decided adversely to the contention of the plaintiff herein, in the case of *United States* v. *Franklin Sugar Refining Co.*, 137 Fed. 677 (T. D. 26316). That case involved the importation of two cargoes of raw sugar from France, one per steamship *Vimeira* and the other per steamship *Wildcroft*. In deciding that case, Holland, district judge, U. S. Circuit Court, Eastern District of Pennsylvania, said:

Upon the arrival at Philadelphia of both of these vessels, the entries were liquidated by the collector at this port. For the *Wildcroft* the liquidation took place on June 13, 1897. On July 7, 1897, a certain correction was made in this liquidation by the collector and was stamped upon its face, "Subject to change of rates if required by law," in accordance with a circular issued by the Secretary of the Treasury on April 5, 1897, requiring the liquidation of sugar upon which the exporting country paid a bounty to be so stamped, and the circular instructed the customs officers to delay, until further orders, final liquidation of entries that arrived after the 1st day of April, 1897, and expressly exempted any entries of merchandise which was purchased and directed by the owner to be shipped for import into the United States by any persons prior to April 1, 1897. Against this liquidation the importers filed a protest July 16, 1897, making as their only claim the refusal of the collector to allow a cash discount in estimating the dutiable value of the cargo. There was no protest made against the countervailing duty of one-tenth of 1 cent per pound at this time.

France, the country from which this sugar was imported, passed an act allowing exporters of sugar a certain bounty, which went into effect April 7, 1897, after these two cargoes of sugar had been shipped, and no protest was entered by the defendant against the assessment of one-tenth of 1 cent per pound in the tentative liquidation made by the collector on June 13, 1897, although it had not received any bounty upon either cargo of sugar, but subsequent to the first protest filed on July 16, 1897, to the tentative liquidation by the collector, the Board of General Appraisers filed an opinion on October 30, 1897, in which they held that no bounty was payable on sugar exported from France prior to April 7, 1897, and, therefore, the United States was not entitled to assess an additional duty of one-tenth of 1 cent per pound on such sugar.

The order of the Secretary of the Treasury of July 5, 1897, requiring the tentative liquidation to be stamped "Subject to change of rates if required by law," had been revoked, as the reasons for continuing the order no longer existed, and on July 28, 1898, a final liquidation was made by the collector of the duty upon the *Wildcroft's* cargo. On July 30, 1898, within ten days thereafter, the defendant company filed a protest against this final liquidation, on the ground that the additional duty of one-tenth of 1 cent per pound was charged on the cargo contrary to law. A similar protest was filed for the same reason, to the final liquidation made in regard to the cargo of the *Vimeira*.

The Government contends that as to the *Wildcroft*, the liquidation made July 7, 1897, by the collector was the final liquidation, against which all objections should have been raised by protest within ten days, under section 14 of the act of June 10, 1890, and that all questions not then raised could not subsequently be raised or considered upon the liquidation which took place July 28, 1898. The defendant claims, however, that the latter assessment was the final liquidation, against which a protest could be made for any claim whatsoever, and on appeal the Board of General Appraisers so held.

I am of the opinion that the Board is clearly right in so holding, and that the first liquidation must be regarded as tentative. It was stamped "Subject to change of rates if required by law," and this notice could mean nothing else than that the Government did not consider this assessment final.

The final decision of the collector as to "rates and amount of duties chargeable upon imported merchandise," against which the importer is required to file his protest, under section 14, "within ten days" after such decision, must necessarily be a final decision, and he is not permitted to give this notice "before" such ascertainment and liquidation of duties. The importer is thus notified by section 14 of the act of June 10, 1890, that he can not enter his protest before such "rates and amount of duties" are ascertained and liquidated by the final decision of the collector. It will be disregarded if entered too soon (*In re* Bailey, 112 Fed. Rep. 413). Prior to the passage of the act of 1890, a protest could be filed any time after entry and duties estimated thereon. The final liquidation was regarded as only fixing the limit beyond which notice shall not be given (Davies *v.* Miller, 130 U. S. 284). In order to avoid the inconveniences of this practice, the act was passed by inserting the words "but not before" in section 14. So that the legislation on this subject shows it has been the constant aim of the Government to confine the time of protest to "within ten days from final liquidation," and to prevent it from being filed either "before" such "final ascertainment" or after the expiration of the ten days.

When the Government liquidated the entry of the *Wildcroft* and placed a notice upon that liquidation that it was "subject to change of rates if required by law," they gave notice that it was not a final decision of the collector. It is urged, however, that the importer must have regarded this as a final and not a tentative liquidation, because he filed a protest on July 16, 1897. It may be that the importer so regarded this liquidation at that time; but even if this be true, the Government should not be permitted to escape the effect of its own act in notifying importers that these liquidations were not final. The Government must be bound by its intention in this regard, and not be permitted to take advantage of a misconstruction put upon its acts by an importer, in the first instance, and to say to him that because he acted in a way to indicate that he regarded the first liquidation as final, therefore he must be held to that, notwithstanding the fact that it was not so intended or acted upon by the Government, and notwithstanding the further fact that the importer before the expiration of ten days from the "final adjustment" took a different view of the question as to the time within which he was required to file his notice, and assumed, as the Government intended, that the first assessment was only tentative, as the notice stamped thereon indicated; that the liquidation of July 28, 1898, was final, and fixed the time within which a valid protest could be entered.

It is not the case of a reliquidation pursuant to a decision of the Board of General Appraisers, where the protestant is bound by the original ground of protest, as in Stern *v.* United States (77 Fed. Rep. 607). It is a case where, by reason of instructions of the Secretary of the Treasury, a tentative liquidation was made, and notice of that fact served upon the importer, who, at the final adjustment, raised such questions as suggested themselves to him, and he should be heard. The Government, by its notice, created an unusual situation as to the final liquidation of these entries, and any doubt for which it is responsible should be re-

solved in favor of the defendant. A similar technical objection taken by the Government was overruled in the case of Robertson *v.* Downing (127 U. S. 607).

The gist of a similar holding in *Baldwin Bros. & Co.* v. *United States*, 4 Treas. Dec. 3, T. D. 22698, G. A. 4833, is reported in the syllabus to that case, as follows:

The date of the "liquidation and ascertainment of duties" mentioned in section 14 of the customs administrative act of June 10, 1890, "within ten days after but not before" which protests must be filed, is the date of final liquidation stamped on the entry by the collector, after the statement of the duties has been certified by the naval officer to be correct, as provided in article 1416, Customs Regulations, 1899, and is not the date of the original estimation of duties, which, as provided in article 410 (*ib.*), is tentatively made by the collector at the time of entry, before examination and appraisement of the merchandise.

Accordingly, a protest filed with the collector within ten days after such original estimate, but before the final liquidation, is invalid as being made prematurely.

In *Gandolfi et al.* v. *United States*, 74 Fed. 549, the Circuit Court of Appeals, Second Circuit, dealing with a similar question, said:

This statute, in effect, provides that, when the collector has once liquidated the duties, he may not reliquidate them after a year from entry, where there is no fraud and there has been no protest. If the liquidation of the entry on March 7, 1893, which was proved in the case, was in fact a reliquidation, it would be within the prohibition of this statute. But there is nothing in the case to show that the duties were ever liquidated before March 7, 1893. There is no proof of any "final ascertainment and liquidation of the duties" by the collector, nor of any "stamping of such ascertainment and liquidation upon the entry," earlier than March 7, 1893; and these are the acts which constitute a liquidation under the statutes. Davies v. Miller, 130 U. S. 289, 9 Sup. Ct. 560.

Also pertinent to the question here involved is the following from *United States* v. *De Rivera et al.*, 73 Fed. 679:

* * * The laws of the United States in regard to the liquidation and collection of duties upon imports are evidently constructed upon the theory that the citizen who imports goods has no rights at all, or, at least, that the federal government need not be under the slightest concern about them. Under the statutes and the authorities, it is clear that there was no liquidation until the collector himself acted. The mere act of the appraiser in raising the value was a step towards liquidation, but liquidation was not complete until the collector had performed his act. Under the statute, moreover, the collector may "liquidate" whenever he pleases. It may be a week after the goods arrive, or it may be eight years, as it was in this case; and, under the law, he is under no obligation to notify the merchant of his liquidation. The merchant, apparently, has got to keep watch from the time he gets the goods until the collector acts and liquidates, and he takes the risk of not being advised of that action when it occurs. Under the laws as they stand, there is absolutely nothing to do in this case but to direct a verdict in favor of the plaintiff for the full amount claimed, with an exception to the defendant.

Under the law as it is today, the collector is required to give notice to the importer when he has made his final liquidation by posting the same in a conspicuous place in the customhouse. Under the plain language of section 514, *supra*, the importer is required, if he desires to challenge the collector's liquidation, to "within sixty days after, but not before such liquidation * * * file a protest in writing with the collector * * *." This was the procedure followed by the plaintiff in this case.

If we should accept as correct the contention of the plaintiff herein that "The estimated duty being a decision of the collector, it became final and conclusive after 60 days * * *," and the present protest not having been filed within 60 days thereafter, it would be necessary to dismiss the same as not having been filed within the statutory time. In that event, the liquidation by the collector would stand, and the plaintiff herein would be without redress.

Under the authorities cited and quoted from, *supra*, the only legal liquidation made by the collector against which a protest could be filed was made on June 23,

1953, and the estimate of the duties due upon this importation made by the collector prior to his liquidation was not a decision of the collector as to the rate and amount of duty against which a protest would lie. It is, therefore, clear that the estimated duty was not a decision of the collector, which became final and conclusive after 60 days.

Since the plaintiff herein is "protesting this claim on the sole, single issue of date of liquidation, and not on any other ground," no evidence was offered to establish an error in the collector's classification of the involved merchandise. All claims in this protest are, therefore, overruled. Judgment will be rendered accordingly.