**No. 61309.**—Quaker Waxed Products Corp. *v.* United States, protest 276885–K (Philadelphia).

FORD, Judge: The merchandise the subject of this proceeding was classified by the collector of customs as "(Aluminum foil) as:—Foil under 0.006 inch thick: Aluminum, valued per pound—Under 27½ cents," and duty was levied thereon at the rate of 40 percent ad valorem under paragraph 382 (a) of the Tariff Act of 1930. Plaintiff's protest is in the following language:

August 15, 1955.

Collector of Customs
2nd & Chestnut Streets
Philadelphia 2, Pennsylvania

Dear Sir:

I wish to file protest to you against the liquidation of consumption entry #53 dated and filed July 2, 1954 and liquidated July 29, 1955.

I wish to inform you that this material was erroneously reclassified. The material which was shipped and which we received was scrap aluminum foil of various gauges and widths. The major portion of this material was scrap due to the fact that it was either over annealed, welded, corroded, and was rejected by the mill as material which could not be used in the manufacture of aluminum foil products. A small portion of this material was salvageable and we would like the opportunity of going over this matter again with your examiner.

Very truly yours,

QUAKER WAXED PRODUCTS CORP.
D. R. Schaffer.

When this case was called for hearing at Philadelphia on May 1, 1956, counsel for the plaintiff offered the testimony of two witnesses, constituting 36 pages of typewritten record. At the close of this hearing and after cross-examining the plaintiff's two witnesses, counsel for the Government moved to dismiss the protest upon the ground that it does not comply with section 514 of the Tariff Act of 1930. To this motion, counsel for the plaintiff responded as follows:

Mr. HASS: I only want to say that we have brought out the various rates, and the witness testified that the original rate was 1½ cents a pound, which the records of the Customhouse show it is for that kind of a subject, and that when they raised the rate to 40 per cent, they raised it arbitrarily, and it is the duty of this court to decide whether the original rate of 1½ cents remains, or the new rate will prevail.

On the invoice in this case, appears the following in blue ink.

$$\frac{1\frac{1}{2}\cancel{c} \quad \text{lb}}{\text{Par. 374}}$$

Also on the summary of entered values, under the heading, "TARIFF PARAGRAPH [and] RATE," appears the following: "374     1½¢ lb." It is made clear by all the official papers before us that, when this merchandise was entered, the collector tentatively classified it as "Aluminum scrap" and levied estimated duty thereon at the rate of 1½ cents per pound. It is also clear from the record made before the trial court that the court, plaintiff's counsel, and Government counsel had the same understanding. It is equally clear that the trial court and counsel for both parties understood that the plaintiff was claiming the aluminum scrap here involved to be properly dutiable, as such, under paragraph 374 of the Tariff Act of 1930, as modified, at the rate of 1½ cents per pound, as it had been tentatively classified and estimated duties levied thereon at the time of entry. There is nothing in the record before us to indicate in any manner that the collector of

customs did not understand what the plaintiff's objection was at the time the protest was filed and also exactly what plaintiff was claiming in its protest.

The fact that the defendant fully understood the plaintiff's claim is made clear by the following quotation from its brief filed herein on August 6, 1956:

The importer protests this classification, claiming the merchandise to be "scrap aluminum foil" under the provisions of paragraph 374 of said act, with duty at the rate of 1½ cents per pound under that paragraph as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

The question of what constitutes a sufficiently definite and specific protest under the provisions of many tariff acts, which contained language quite similar to that employed in section 514 of the Tariff Act of 1930, has been before this and other courts many times. One of the leading cases on this question is *United States* v. *Salambier*, 170 U. S. 621, 42 L. ed. 1167, from which the following is quoted:

\* \* \* In the present case, the board of general appraisers held that "sweetened chocolate" was dutiable at the rate of 2 cents per pound under said paragraph 319. The United States appealed from the decision of the board of appraisers to the circuit court of the United States for the southern district of New York, not on the ground that the merchandise in question was not properly dutiable, under paragraph 319, at 2 cents per pound, but claiming that the protest made by the importer against the decision of the collector, who had assessed the sweetened chocolate, under paragraph 239 of said act, at 50 per cent ad valorem, was not a sufficient protest under existing law. From the judgment of the circuit court affirming the decision of the board of general appraisers an appeal was taken by the United States to the circuit court of appeals, and that court has certified to us the single question of the legal sufficiency of the protest which, omitting unnecessary words and figures, was as follows:

"I do hereby protest against the rate of 50% assessed on chocolate imported by me, Str. La Bretagne, June 23, '91. \* \* \* I, claiming that the said goods under existing laws are dutiable at two cents per pound, and the exaction of a higher rate is unjust and illegal. I pay the duty demanded to obtain possession of the goods and claim to have the amount unjustly exacted refunded."

\*        \*        \*        \*        \*        \*        \*

What is claimed by the government is that the nature of the importer's objections to the decision of the collector was not set forth with the distinctness and with the minuteness of specification required by the statute.

It does not appear that the collector deemed the protest insufficient in form or unintelligible. Not complaining of any want of distinctness in the protest, he adhered to his decision as to the nature of the merchandise and the amount of the duty, and, in pursuance of the statute, transmitted the protest with the invoice and entry to the board of general appraisers. The board regarded the protest as sufficient in respect to form and distinctness, reversed the decision of the collector, and held that the merchandise was dutiable at 2 cents per pound under paragraph 319 of the tariff act.

\*        \*        \*        \*        \*        \*        \*

Apart from the authorities cited, and which we shall presently examine, we have no difficulty in agreeing with the board of appraisers, and with the circuit court, that the protest was, in form and substance, a reasonable compliance with the law. The object of the statute, in requiring a protest, was to distinctly inform the collector of the position of the importer. In this instance, it was impossible for the collector to have read the protest without perceiving that his classification of the merchandise, as dutiable under paragraph 239 of the tariff act, at 50 per cent ad valorem, was objected to, and that the importer claimed that under the law, the goods were dutiable at 2 cents per pound. The collector could not have been perplexed by the omission to name the specific paragraph which the importer sought to have applied, for there were but two paragraphs, besides 239, which dealt with the subject, namely, paragraphs 318 and 319, and under either of them the duty was that claimed by the importer, 2 cents per pound.

The conclusion thus reached is consistent with the authorities to which our attention has been called in the briefs of the respective parties:

"We are not, therefore, disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government." Greeley's Administrator v. Burgess [Converse v. Burgess], 59 U. S. 18 How. 413 [15: 455].

"Persons importing merchandise are required to make their protests distinct and specific [in order] to apprise the collectors of the customs of the nature of the objections * * * before it is too late to remove them or to modify the charge, and * * * that the officers of the government may know what they have to meet in case they decide to exact the duties [as intimated] notwithstanding the objection, and expose the government to the risk of litigation." Curtis's Administratrix v. Fiedler [Fiedler v. Curtis], 67 U. S. 2 Black, 461 [17: 273].

"The object of the requirement is to prevent a party, if he suffers the mistake or oversight to pass without notice, from taking advantage of it when it is too late to make the correction, and to compel him to disclose the grounds of his objection at the time when he makes his protest. * * * Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated." Davis v. Arthur, 96 U. S. 148 [24: 758].

"A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure." Arthur v. Morgan, 112 U. S. 495 [28: 825].

"A protest which indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles should not be discarded because of the brevity with which the objection is stated." Schell's Executors v. Fauché, 138 U. S. 562 [34: 1040]; Heinze v. Arthur's Ex'rs [Heinze v. Miller], 144 U. S. 9 [36: 333].

In Herrman v. Robertson, 152 U. S. 521 [38: 538], a protest was held insufficient, in that it failed to point out, or suggest in any way the provision which actually controlled, and in effect only raised a question which of two clauses, under one or the other of which it was assumed that the importation came, should govern as most applicable.

Under these and other authorities which we have examined, we conclude that the notice was sufficient, and accordingly answer the question certified to us by the Circuit Court of Appeals in the affirmative, and it is so ordered.

The above authorities express our views upon the subject to which they are addressed far more eloquently and forcefully than we could do ourselves, and, it is our view that, when applied to the facts in this case, they require a finding that the present protest is legally sufficient as to distinctness and specificness. It is apparent, in this case, that this protest was sufficiently distinct and specific to apprise the collector of the customs of the nature of the objections by the importer before it was too late to remove them or to modify the charge, and the officers of the Government knew what they had to meet in case they decided to exact the duties, notwithstanding the objection, and expose the Government to the risk of litigation.

In the instant case, it was impossible for the collector to have read the protest, without perceiving that his classification of the merchandise as dutiable under paragraph 382 (a) of the Tariff Act of 1930 at 40 percent ad valorem was objected to, and that the importer claimed that, under the law, the goods were dutiable at 1½ cents per pound. The collector could not have been perplexed by the

omission to name the specific paragraph which the importer sought to have applied, for there was but one paragraph, besides 382 (a), which dealt with the subject, namely, paragraph 374 of said act, as modified, *supra*.

The objection in the present protest was sufficiently distinct and specific, as, when fairly construed, to show that the objection at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated. This is clearly demonstrated by the fact that the collector registered no complaint about the protest not being definite and specific, the trial court registered no complaint about the protest not being definite and specific, the Government counsel tried the case, before registering any complaint about the protest not being sufficient, and, then, filed its brief, setting out therein the exact complaint and claim made by the importer herein, as hereinbefore set out.

When the merchandise herein was entered, it was tentatively classified under paragraph 374 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, this being the only paragraph providing for aluminum scrap, and the importer was required to pay estimated duties thereon at the rate of 1½ cents per pound, in the amount of $495.63. When the collector came to liquidate the entry, he classified the merchandise under paragraph 382 (a) of the Tariff Act of 1930 and levied duty on the merchandise at the rate of 40 percent ad valorem. It is well-settled law that the collector was not bound by his tentative classification, but had a right to classify the merchandise as he saw fit when he came to liquidate the entry. *Dart Export Corp.* v. *United States*, 33 Cust. Ct. 386, Abstract 58434, affirmed in *Same* v. *Same*, 43 C. C. P. A. (Customs) 64, C. A. D. 610.

Counsel for the plaintiff herein filed his brief on the merits on July 13, 1956, wherein he discussed the sufficiency of this protest. Counsel for the defendant filed his brief on the merits on August 6, 1956. Although there was in the record a motion to dismiss the protest on the ground that it was not sufficiently specific, on which motion ruling was reserved by the trial judge, and counsel for the plaintiff had discussed the sufficiency of the protest in his brief, the brief for the defendant on the merits contained no suggestion that the protest was not sufficient, nor was any reference made to the said motion to dismiss.

In view of the facts in this case, as set out above, and following what we perceive to be the holding in the authorities cited and quoted from, we hold that the protest is sufficiently distinct and specific to meet the requirements of section 514 of the Tariff Act of 1930, since every one connected with the transaction appears to have understood the complaint and the claim of the importer.

Paragraph 382 (a) of the Tariff Act of 1930 provided, *inter alia*, for "* * * aluminum foil less than six one-thousandths of one inch in thickness, 40 per centum ad valorem." Paragraph 374 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, is as follows:

Aluminum, aluminum scrap, and alloys * * * in which aluminum is the component material of chief value:

| | |
|---|---|
| In crude form (except scrap) | 2¢ per lb. |
| In coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares | 3¢ per lb. |
| Scrap | 1½¢ per lb. |

At the trial of this case, the vice president of the corporation, Mr. Schaffer, testified that he did the purchasing; that he ordered this merchandise from the Aluminum Rolling Mills, Ltd., of Canada; that, on the order which he placed, it delivered scrap aluminum foil; that the regular material, primary material of

the type he purchased, the price varied from 68 cents a pound down to 54 cents a pound. The witness was then interrogated and answered as follows:

Q. Do you know the gauge of the material that you purchased?—A. This was scrap material, so there were many gauges.

Q. At what price per pound did you purchase the scrap aluminum foil?—A. 24 cents a pound.

On cross-examination, the witness testified at some length as to how he tried to process the merchandise; that he rewound the scrap aluminum from a large roll to a small roll, making the diameter smaller and cutting the sides. "We take this roll, and when it is possible, we rewind it; we put it on an automatic machine, and this is supposed to wind, but it doesn't."

X Q. You make the roll smaller by making the diameter smaller; you roll less on it, and you also make it smaller by cutting, or trimming the width?—A. Where it is possible, yes.

The plaintiff's second witness, Jack Gelman, was the plant superintendent and examiner. He testified that the quality of the involved aluminum foil was such that it was nothing more than scrap aluminum foil.

A. It cannot be used for an end product as we do with aluminum foil. We cannot rewind the foil like that, and cannot sell it for distribution as an end product. All we can do with that is bale it, and sell it to a smelting company as scrap.

He testified further that, as plant superintendent, he knew what the company paid for the involved foil and that the price was 24 cents per pound; that the price at the same time for primary aluminum foil was from 55 to 65 cents per pound.

Q. You would say that this order was all of scrap aluminum foil?—A. That is right.

On cross-examination, the witness was interrogated and testified as follows:

X Q. Did you order scrap aluminum foil this time, or did you order aluminum foil?—A. We ordered scrap aluminum foil.

X Q. You said that some of it you sold to a smelting company?—A. We sold to a junk dealer.

X Q. You said a smelting company. Do you want to change your testimony?—A. That is right. It was a junk dealer, not a smelting company, a man who picks up scrap.

The Government offered no testimony in this case. The testimony of plaintiff's two witnesses, therefore, stands without contradiction.

The evidence definitely establishes that the subject merchandise is scrap aluminum or scrap aluminum foil. We, therefore, hold all of said merchandise to be properly dutiable at the rate of 1½ cents per pound under paragraph 374 of the Tariff Act of 1930, as modified, *supra*.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.