BEFORE THE SECOND DIVISION, MAY 25, 1959

**No. 63098.**—E. Gross & Co., Inc. *v.* United States, protest 306918–K (Bridgeport).

RAO, Judge: Certain imported cotton cord tire fabric and cotton belting were classified as entered, respectively, within the provisions of paragraph 904(e) of the Tariff Act of 1930, for "Tire fabric or fabric for use in pneumatic tires, including cord fabric," and of paragraph 913(a) of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for "Belts and belting, for machinery: Wholly or in chief value of cotton * * *." Accordingly, duty was assessed upon said merchandise at the respective rates of 25 per centum ad valorem and 15 per centum ad valorem.

An additional duty of 5 cents per pound was imposed upon the cotton cord tire fabric by reason of the provision in paragraph 924 of said tariff act, as modified by said trade agreement, reading as follows :

All the articles enumerated or described in Schedule 9 (except in paragraph 922), Tariff Act of 1930, shall be subject to an additional duty on the cotton contained therein having a staple of one and one-eighth inches or more in length of_____*\*\*

In a protest duly filed, plaintiff alleged the following:

This protestant, before importing the material which is the subject of Entry No. H–420, conferred with the office of the U.S. Appraiser of Merchandise at New York, and was advised then that the duty would be on the basis as actually paid. At no time was any mention made by the appraisers of the 5% per pound ad valorem that you now propose to assess.

Actually, the merchandise which was carried as cotton tire cord fabric consisted of seconds and obsolete goods, which is not now, and was not then used by anyone as tire cord fabric. It was not bought for use as tire cord fabric. It was not sold for use as tire cord fabric. It was actually used for something altogether different. It was stripped and the cords were used to make roofing mops. Actually this material was no different than rags or scrap which calls for no duty whatsoever. On that basis, the duty which was paid on imported material that was labelled tire cord fabric should be refunded.

With respect to the material labelled belting duck, three to four thousand pounds of that material was in short pieces of 5, 10, and 50 yards, and is still on hand. Now, this material then and now consisted of shorts and seconds, that is, what is left or damaged. The regular belting duck is sold in rolls of 200–500 yard lengths. This material also was not used or sold as belting duck.

The unfortunate and unfair aspect of this present proposal to levy an additional assessment lies in the fact that it would never have been imported at all if any greater amount of duty than was paid was applicable. And, it was in order to verify this fact that the protestant went to New York to the office of the United States Appraiser of Merchandise in order to receive advice with respect to what the duty would be. Should you desire further evidence and support of the facts alleged in this protest, we will be glad to provide that for you upon request.

Taking first the merchandise classified as cotton belting, it is at once apparent that the allegations with respect thereto are wholly insufficient to state a cause of action. Nowhere does the protest set forth how this material shall be classified, nor what rate of duty is claimed to be applicable in lieu of the provision invoked by the collector. It is not even clearly asserted that the collector acted erroneously in classifying this portion of the importation as cotton belting.

Section 514 of the Tariff Act of 1930, which authorizes the filing of a protest against any decision of a collector as to the rate and amount of duties chargeable upon imported merchandise, provides for a distinct and specific statement of the reasons for the objection thereto. While no formal rules have been devised for the manner in which such objections must be expressed, it has long been held that they must be of such character as to sufficiently apprise the collector of the nature of the complaint being lodged, so that he may be afforded an opportunity to review, and, if necessary, correct, any errors he may have committed. *Davies* v. *Arthur*, 96 U.S. 148; *Arthur* v. *Morgan*, 112 U.S. 495; *Kilburn Mill* v. *United States*, 26 C.C.P.A. (Customs) 54, T.D. 49598. And when a protest fails to suggest the provision which properly embraces the merchandise, it has been held to be fatally defective. *Herrman* v. *Robertson*, 152 U.S. 521.

Despite the reference in the instant protest to the "material labelled belting duck," not used or sold as such, it can not be said that the collector was fairly apprised of what it was alternatively claimed to be, nor whether all of said material, or only the quantity "still on hand," but not otherwise specified, was elsewhere provided for. That the collector did not construe the protest as applicable to the cotton belting material seems evident from his timely answer thereto, wherein he recites that the merchandise covered by the "annexed protest" was classified as "Tire fabric or fabric for use in pneumatic tires, including cord fabric, containing staple over 1⅛″ under Paragraph 904(c) at 25% ad valorem, and Par. 924 at 5¢ per pound \* \* \* on the staple over 1⅛″ contained therein."

We are, therefore, constrained to hold that, insofar as said protest purportedly relates to cotton belting, it is legally insufficient, and it is dismissed.

Although the allegations of the protest with respect to the so-called cotton tire cord fabric are to some extent vague and inconsistent, in that there is no free list provision for cotton rags,[1] and no provision whatsoever for cotton scrap, under the circumstance that it does claim said material to be rags, and there is but one provision in the cotton schedule, to wit, paragraph 922, for cotton rags, we hold the protest to be sufficiently distinct and specific notice of the objections raised by the plaintiff in connection with said cotton tire cord fabric. See *Quaker Waxed Products Corp.* v. *United States*, 39 Cust. Ct. 475, Abstract 61309.

It is, of course, clear that insofar as the assessment of the additional duty provided for in paragraph 924, as modified, *supra*, is concerned, the protest is valid. And it is primarily the alleged impropriety of that assessment upon which plaintiff relies.

In the case of *James Bute Company* v. *United States*, 33 Cust. Ct. 130, C.D. 1644, this court discussed the burden resting upon a protestant who disputes the collector's finding as to staple length of cotton in the following terms:

It thus appears that the issue in this case is confined to the question of what was the length of the staple of the cotton of which the subject cloth was composed. The decision of the collector to the effect that paragraph 924, *supra*, has application to the merchandise at bar is presumptively correct and rests upon the implication that he has found the existence of all facts necessary to sustain his ruling. *United States* v. *I. Magnin & Co., Inc.*, 21 C.C.P.A. (Customs) 77, T.D. 46394; *United States* v. *Marshall Field & Co.*, 17 C.C.P.A. (Customs) 1, T.D. 43309. Accordingly, it must be presumed, at the outset of this inquiry, that the involved cloth contains cotton having a staple of $1\frac{1}{8}$ inches or more, to the extent of the percentages hereinabove indicated, and that the plaintiff has the burden of establishing the contrary. That is not to say that the presumption of correctness in and of itself possesses evidentiary value or may be weighed against relevant and material proof proffered by the plaintiff. If a *prima facie* case, adequately meeting all of the material issues in the controversy, is made out, the presumption is destroyed, and the Government has the burden of going forward with affirmative evidence to support the collector's classification. That party then is entitled to prevail in whose favor the proof preponderates.

To these observations we added, in the case of *Sterling International Corporation* v. *United States*, 40 Cust. Ct. 403, Abstract 61422, the following:

But a *prima facie* case must be made out and competent evidence introduced to overcome the presumptively correct action of the collector. At the very least, in a highly technical matter of this kind, that evidence should consist of the testimony of one experienced in cotton stapling and qualified to challenge the collector's finding as to length.

The record in this case lacks such evidence, and we are constrained to hold that the presumption of correctness has not been overcome.

The record in the instant case reveals that plaintiff made no effort to determine the staple length of the cotton contained in the subject tire cord fabric. Its only witness, Robert H. Gross, president and treasurer of the corporation, testified, on cross-examination, not only that he did not check the staple length of the cotton, but that he was unable to make such a determination. He felt he had no reason to look into the matter, since prior to importation he had discussed with various customs officials at the port of New York the potential classification of the fabric he desired to import and was advised only of the application of the provisions of paragraph 904(e), *supra*, no mention having been made of the question of staple length. However, he could not recall whether or not he had exhibited to these officials samples of the prospective importations.

---

[1] Except the provisions in paragraph 1750 of said act for rags which are paper stock.

In any event, it is of little moment that these officials did not suggest the possibility that paragraph 924, as modified, *supra*, might be involved. Any advice they may have given was gratuitous. Except for the procedures outlined in section 16.10a of the Customs Regulations of 1943, as added by T.D. 52588 (85 Treas. Dec. 302), which have no application here, it is no part of the duty of any customs official to provide binding information with respect to the entry of imported merchandise. *Jacksonville Paper Co., a Corporation* v. *United States*, 30 C.C.P.A. (Customs) 159, C.A.D. 228.

In support of the collector's action in invoking said paragraph 924, there is in evidence a report of the United States Customs Laboratory at the port of New York showing that the sample of cotton tire cord fabric submitted to it for information as to the cotton staple length was composed of "100% cotton yarn with a staple of 1⅛ inches or more in length." It also appears that the sample forwarded to the laboratory was furnished to the collector at the port of Hartford by the plaintiff.

There is no evidence in this case to rebut the presumptively correct finding of the collector that the involved merchandise was composed of cotton having a staple length of 1⅛ inches or more in length. The claim in the protest to the effect that the additional duty of 5 cents per pound provided for in paragraph 924, as modified, *supra*, should not have been assessed is, therefore, overruled.

Furthermore, we are of opinion that the evidence addressed to the cotton rag provision is similarly deficient. The fact, as testified by plaintiff's witness Gross, that the cotton cord fabric was sold for conversion into roofing mops does not establish either that this material was not cotton cord tire fabric, or that it was rags.

The provision in paragraph 904 (e) for tire fabric or fabric for use in pneumatic tires is a designation of an article in terms of its use. Under settled principles of law, where an article is provided for according to use, what is contemplated is that it shall be of a class or kind of merchandise chiefly used for the purposes described at or prior to the time the law was enacted. *United States* v. *C. J. Tower & Sons*, 26 C.C.P.A. (Customs) 1, T.D. 49534. And when the collector classifies an article within a use provision, there is a presumption that he has found as a necessary fact that it is chiefly used in the manner provided. The burden rests with the party claiming otherwise to negative such fact. It has been said (*L. Tobert Co., Inc., et al.* v. *United States*, 28 Cust. Ct. 456, Abstract 56581, affirmed, 41 C.C.P.A. (Customs) 161 C.A.D. 544) :

In order to succeed in their contention that the articles under consideration are not illuminating articles, it was incumbent upon plaintiffs to establish by competent evidence that the articles are not chiefly used for illuminating purposes. * * * The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally. It appears from the record that the testimony of plaintiffs' witnesses to which reference has been made, *supra*, covered a relatively narrow field—in and about New York, with an isolated instance in Oklahoma—which certainly falls short of the requirements of proof of chief use. [Cases cited.]

The proof must be addressed, not to the particular importation, but to the class to which it belongs. *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T.D. 42240.

Except for the statement in the record that "the material would be used for roofing mops. That's the only thing I knew it could be used for," there is not a scintilla of evidence purporting to show that cotton cord tire fabric of the kind imported was not chiefly used in the manufacture of tires.

Neither has any evidence been adduced to establish that in its imported condition this merchandise consisted of rags. The consular invoice, which is in evidence, reveals that some 13,308 pounds of this material was imported in rolls, but the lengths of the individual small pieces, if indeed there were such pieces, have not been shown.

In the recent case of *United States* v. *J. Eisenberg, Inc.*, 43 C.C.P.A. (Customs) 105, C.A.D. 616, our appellate court adverted to the following definitions of the word "rag":

Webster's New International Dictionary—1949

Rag 1. a A waste piece of cloth torn or cut off; a tattered piece of cloth, a shred; tatter. * * *

New Standard Dictionary—1916

Rag, n. 1. A fragment of cloth torn or partly torn from its original connection; especially a worn, frayed, or torn bit of a garment; * * *.

A New English Dictionary on Historical Principles (Oxford Dictionary), 1914. Vol. VIII, Page 105—

Rag 1. A small worthless fragment or shred of some woven material; *esp.* one of the irregular scraps into which a piece of such material is reduced by wear and tear.

Century Dictionary and Cyclopedia, 1911, Vol. VIII, page 4937

Rag. 4. A torn, worn or formless fragment or shred of cloth; a comparatively worthless piece of any textile fabric, either wholly or partly detached from its connection by violence or abrasion.

We are not here provided with any evidence from which it may be determined whether or not the subject cotton cord tire fabric, in its condition as imported, responded in any particulars with the foregoing definitions.

Accordingly, and owing to the aforementioned inadequacies of the instant record, we must conclude that the presumption of correctness attaching to the collector's classification of the involved cotton cord tire fabric, within the provisions of paragraph 904(e) and of paragraph 924, as modified, *supra*, has not been overcome. All claims in the protest with respect to said merchandise are overruled. In all other respects the protest is dismissed.

Judgment will be entered accordingly.